UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RASHAD AHMAD REFAAT EL BADRAWI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| DEPARTMENT OF HOMELAND SECURITY; GREGORY | ) | |
| MANACK, Resident Agent in Charge, Hartford Sub-District, | ) | |
| Immigration and Customs Enforcement, Department of | ) | |
| Homeland Security; MICHAEL S. LOSER, Senior Special | ) | |
| Agent, Hartford Sub-District, Immigration and Customs | ) | |
| Enforcement, Department of Homeland Security; CHARLES L. | ) | |
| LEE, Warden, Hartford Correctional Center; ROBERT | ) | |
| MUELLER, Director of the Federal Bureau of Investigation; | ) | |
| MICHAEL CHERTOFF, Secretary of the Department of | ) | |
| Homeland Security; FEDERAL BUREAU OF | ) | |
| INVESTIGATION; and UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Rashad El Badrawi, through his attorneys Michael Wishnie and Hope Metcalf,

alleges the following facts upon information and belief:

## PRELIMINARY STATEMENT

1.    This is a civil rights lawsuit to redress the arbitrary arrest, wrongful detention,

coerced departure, and other malicious treatment suffered by Rashad El Badrawi, a foreign

national who had lawfully studied and worked in the United States for nearly eleven years. This

action also seeks redress for the denial of Mr. El Badrawi's right to adequate medical care, and

his right to observe religious practices, while he was detained in a Hartford jail in the custody of

U.S. Immigration and Customs Enforcement ("ICE"), a unit of the Department of Homeland

Security ("DHS").

2.     In October 2004, while working as a researcher at the Richard D. Berlin Center for Cell Analysis and Modeling at the University of Connecticut Health Center, Mr. El Badrawi was wrongfully arrested and detained by DHS. With no notice or warning of any possible violation, ICE agents—under the auspices of a secret ICE program called "Operation Frontline"—arrested Mr. El Badrawi outside his Hartford, Connecticut residence for allegedly overstaying his period of authorized residence.

3.     Despite these allegations, Mr. El Badrawi was at all times lawfully present and authorized to work in the United States.

4.     After his arrest by ICE agents, Mr. El Badrawi was transferred to the Hartford Correctional Center and detained without bond pending the completion of removal proceedings. During those proceedings, in which the Immigration Judge suggested that he was under suspicion for national security-related concerns, Mr. El Badrawi was coerced to accept "voluntary departure," a form of immigration relief in which the individual agrees to leave the United States at his own expense and is usually granted a brief period to arrange his affairs prior to departure.

5.     Instead of prompt release, however, Mr. El Badrawi was held at the Hartford Correctional Center for nearly six additional weeks, housed with criminal suspects and convicts, denied adequate medical care, and denied the right to practice his religion.

6.     The Plaintiff brings this action to recover compensatory and punitive damages as a result of ICE officials' violations of his Fourth and Fifth Amendment rights. Additionally, Plaintiff seeks compensatory and punitive damages as a result of state officials' violations of his First and Fourteenth Amendment rights. Mr. El Badrawi also seeks a declaration that the Defendants' actions violated his constitutional rights and an injunction requiring expungement of

any derogatory law enforcement records maintained by Defendants regarding the Plaintiff. Finally, Mr. El Badrawi seeks compensatory damages from the United States for the harm he suffered as a result of the torts of false arrest and imprisonment, malicious prosecution, vexatious suit, intentional infliction of emotional distress, and abuse of process.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), 1346(b)(1).   Jurisdiction to grant declaratory judgment is conferred by 28 U.S.C. §§ 2201-02.   Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

8.     By letter dated March 22, 2007, DHS informed Mr. El Badrawi that his administrative claims under the Federal Tort Claims Act ("FTCA") had been denied.   Mr. El Badrawi has thus exhausted his administrative remedies under the FTCA pursuant to 28 U.S.C. §§ 1346(b)(1), 2675(a).

9.     Venue lies in this district pursuant to 28 U.S.C. §§ 1391(b)(2), 1391(e)(2), and 1402(b), as a substantial part of the events giving rise to the Plaintiff's claims occurred in the District of Connecticut.

## PARTIES

10.    Plaintiff Rashad Ahmad Refaat El Badrawi is a foreign national.  From June 2003 to December 2004, he was employed at the University of Connecticut Health Center as a research associate and resided in Hartford, Connecticut.   In October 2004, DHS officials wrongfully arrested and detained him on the basis of alleged civil immigration violations, and detained him in Hartford until his wrongful departure from the United States in December 2004. Mr. El Badrawi currently resides outside the United States.

- 3 -

11. Defendant Gregory Manack was at all relevant times the ICE Resident Agent in Charge in Hartford, Connecticut. Defendant Manack is sued in his individual capacity.

12. Defendant Michael Loser was at all relevant times an ICE Senior Special Agent in Hartford, Connecticut. Defendant Loser is sued in his individual capacity.

13. Defendant Charles L. Lee was at all relevant times the Warden for the Hartford Correctional Center. Mr. Lee is sued in his individual and official capacity.

14. Defendant Robert Mueller is the Director of the Federal Bureau of Investigation. As Director, he has responsibility for the maintenance and operation of various databases that contain and disseminate arrest and detention records. Defendant Mueller is sued in his official capacity.

15. Defendant Michael Chertoff is the Secretary of the Department of Homeland Security. As Secretary of Homeland Security, he has responsibility for the maintenance and operation of various databases that contain and disseminate arrest and detention records. Defendant Chertoff is sued in his official capacity.

16. Defendant Federal Bureau of Investigation ("FBI") is the agency within the Department of Justice responsible for gathering intelligence for criminal proceedings, seeking warrants, executing arrests, and administering certain databases that contain and are used to disseminate arrest, detention and other records.

17. Defendant Department of Homeland Security is a federal agency that operates and maintains federal databases that contain and are used to disseminate arrest, detention, and other homeland security-related records.

18. Defendant United States is sued under the Federal Tort Claims Act for the tortious acts of its employees.

- 4 -

**STATEMENT OF FACTS**

19.   Mr. El Badrawi, a foreign national, first entered the United States in September 1993 on a nonimmigrant student (F-1) visa to pursue a master's degree in pharmacology at Northeastern University in Boston, Massachusetts.

20.   In December 1999, Mr. El Badrawi was granted his first of several H1-B work petitions (and accompanying visas), sponsored by various employers in the biotechnology industry.

21.   Mr. El Badrawi maintained legal immigration status throughout his time living and working in the United States.   He sought renewal of his H1-B petitions as necessary, and periodically departed the country to re-apply as required, remaining outside the United States for the requisite period of time.

**Mr. El Badrawi's Recent Visa History**

22.   Mr. El Badrawi's most recent H1-B sponsor was the University of Connecticut Health Center.

23.   On or about April 4, 2003, DHS granted the University of Connecticut Health Center's visa petition authorizing Mr. El Badrawi's employment as a research associate.

24.   On or about May 26, 2003, the Department of State ("DOS") issued Mr. El Badrawi an H1-B nonimmigrant visa authorizing him to enter the United States to accept an offer of employment at the University of Connecticut Health Center.

25.   Pursuant to this visa, on or about June 1, 2003, Mr. El Badrawi lawfully entered the United States to commence employment.

26.   Mr. El Badrawi resided in an apartment complex in Hartford, Connecticut during the period in which he resided in the United States after his June 1, 2003 entry.

- 5 -

27.   On June 5, 2003, Mr. El Badrawi began working as a research associate at the University of Connecticut Health Center's Richard D. Berlin Center for Cell Analysis and Modeling in Hartford, Connecticut.

28.   While employed at the University of Connecticut Health Center, Mr. El Badrawi worked on a grant project funded by the National Institutes of Health to develop computational software for modeling cell biology.

29.   On or about October 2, 2003, DOS administratively revoked Mr. El Badrawi's visa without notice to Mr. El Badrawi or to his employer.

30.   By the terms of the Certificate of Revocation the revocation was effective only upon Mr. El Badrawi's "departure from the United States."

31.   On or about March 31, 2004, Mr. El Badrawi's employer, the University of Connecticut Health Center, filed a timely application for an extension of stay of his H1-B petition, U.S. Citizenship and Immigration Services ("USCIS") form I-129, including a request for premium processing.

32.   The timely filing of Mr. El Badrawi's application for extension of stay automatically extended Mr. El Badrawi's permission to remain employed and present in the United States for 240 days or until he was notified that his extension of stay had been approved or denied.

33.   Mr. El Badrawi and his employer awaited approval for the extension of stay until his wrongful arrest by ICE on October 29, 2004.

34.   Throughout this period, Mr. El Badrawi contacted several authorities, including DHS, to inquire about the cause of the delay in adjudicating his employer's application for extension of stay.

- 6 -

35.   Neither Mr. El Badrawi nor his employer ever received a decision concerning his application.

36.   From October 2, 2003, until his wrongful departure on December 22, 2004, Mr. El Badrawi never departed the United States, and therefore the DOS visa revocation never became effective.

**Mr. El Badrawi's Wrongful Arrest**

37.   On or about October 28, 2004, Defendant Loser, ICE Senior Special Agent, confirmed that Mr. El Badrawi's I-129 extension of stay form was pending with the ICE Benefit Fraud Unit/Eastern Service Center in Vermont.   Accordingly, Mr. El Badrawi was lawfully present and work authorized in the United States.

38.   Nevertheless, on or about that same day, Defendant Loser signed an ICE Form I-213, Record of Deportable/Inadmissible Alien, which wrongfully and falsely alleged that Mr. El Badrawi had unlawfully overstayed his H1-B authorization by remaining in the United States beyond May 1, 2004.

39.   Defendant Loser knew or reasonably should have known that the allegation in the I-213 that Mr. El Badrawi was in the United States in violation of his immigration status was false.

40.   The I-213 acknowledged that Defendant Loser's investigation of Mr. El Badrawi was predicated upon information received "under the auspices of Operation FRONTLINE."

41.   "Operation Frontline" is a secretive ICE program initiated in October 2004 to arrest and detain a selective class of potential immigration violators claimed to be threats to national security.

42.   Also on or about October 28, 2004, Defendant Manack, ICE Resident Agent in Charge, signed a Warrant for Arrest of Alien for Mr. El Badrawi.

- 7 -

43.   The warrant wrongfully and falsely alleged that Mr. El Badrawi was within the country in violation of the immigration laws of the United States.

44.   Defendant Manack knew or reasonably should have known that the allegation in the warrant that Mr. El Badrawi was in the United States in violation of his immigration status was false.

45.   On or about that same day, Defendant Manack signed a Notice to Appear ("NTA") seeking Mr. El Badrawi's removal from the United States.

46.   The sole ground asserted in the NTA for Mr. El Badrawi's arrest and deportation was that he had overstayed his H1-B authorization by remaining in the United States beyond May 1, 2004.

47.   Defendant Manack knew or reasonably should have known that the allegation in the NTA that Mr. El Badrawi was in the United States in violation of his immigration status was false.

48.   On or about that same day, Defendant Manack signed an ICE form I-286, Notice of Custody Determination, stating that upon his arrest, Mr. El Badrawi would be detained without bond in the custody of ICE.

49.   On October 29, 2004, with no notice or warning of any possible violation, and pursuant to the warrant signed on or about the day before by Defendant Manack, Mr. El Badrawi was arrested by Defendant Loser and two other ICE agents in the parking lot of his Hartford residence.

50.   Defendant Loser signed the warrant's Certificate of Service, stating that he was the officer who served the warrant on Mr. El Badrawi.

51. Mr. El Badrawi was humiliated by the arrest, which occurred in front of his neighbors.

52. After searching Mr. El Badrawi's apartment, the ICE agents took Mr. El Badrawi—fully handcuffed and restrained—to an ICE facility in Hartford.

53. Some time after their arrival, Defendant Loser interrogated Mr. El Badrawi at the ICE facility.

54. Mr. El Badrawi requested that an Immigration Judge redetermine his custody by so indicating on the Notice of Custody Determination.

55. Mr. El Badrawi also requested a phone call and spoke to colleagues at the University of Connecticut Health Center about his arrest and detention.

56. The same day, ICE officials served the NTA on Mr. El Badrawi and filed the NTA in Immigration Court in Hartford.

57. Defendant Manack, by signing and issuing the following documents collectively authorizing Mr. El Badrawi's false arrest and imprisonment—(a) a warrant predicated on false information and issued without probable cause or reason to believe an immigration violation had been committed; (b) an NTA wrongfully and falsely alleging that Mr. El Badrawi was in unlawful status; and (c) a Notice of Custody Determination form denying Mr. El Badrawi bond—acted intentionally, knowingly, and/or with reckless disregard and deliberate indifference to Mr. El Badrawi's constitutional and legal rights to be free from unlawful seizures and imprisonment.

58. Defendant Loser, by signing a Form I-213 Record of Deportable/Inadmissible Alien predicated on false information and the warrant's Certification of Service, as well as arresting Mr. El Badrawi and interrogating him after the arrest, acted intentionally, knowingly, and/or with

reckless disregard and deliberate indifference to Mr. El Badrawi's constitutional and legal rights to be free from unlawful seizures and imprisonment.

59. Defendants Manack and Loser knew or reasonably should have known that their actions violated Mr. El Badrawi's constitutional and legal rights to be free from unlawful seizures and imprisonment.

60. Defendants Manack and Loser knew or reasonably should have known that there was no reason to believe or probable cause that Mr. El Badrawi was illegally in the United States, as is required to issue and serve an arrest warrant and make an arrest against Mr. El Badrawi. *See* 8 C.F.R. § 287.8(c)(2).

61. Mr. El Badrawi remained in ICE custody for the remainder of his time in the United States.

**Detention Conditions**

62. On Oct. 29, 2004, the same day as his arrest, Mr. El Badrawi was transported to the Hartford Correctional Center, where he was photographed, strip-searched, and placed in the general population of convicted criminals and criminal pretrial detainees.

63. Mr. El Badrawi had never previously been inside a correctional facility, jail, or prison of any kind.

64. At the Hartford Correctional Center, Mr. El Badrawi was subjected to traumatic, punitive, and excessively harsh conditions of confinement.

65. There he witnessed numerous criminal acts, including heroin use.

**Denial of Necessary Medication**

66. Mr. El Badrawi suffers from Crohn's disease, a chronic disorder that causes inflammation of the gastrointestinal tract and can result in severe pain when left untreated.

67.   At the time of his arrest, Mr. El Badrawi took medicine daily for his Crohn's disease, as prescribed by his doctor.  He kept his medicine in his apartment in Hartford.

68.   On the day of Mr. El Badrawi's unlawful seizure, ICE agents, including Defendant Loser, took Mr. El Badrawi's medication (Asacol, 400mg tablets) from his apartment to the ICE facility where he was originally detained.

69.   The ICE agents, including Defendant Loser, recklessly left the medication at the facility instead of taking it to the Hartford Correctional Center.

70.   Soon after his transfer to the Hartford Correctional Center, Mr. El Badrawi made repeated requests to prison officials for his medication.

71.   However, Mr. El Badrawi was not given access to new medication until seven days later, during which time he endured substantial pain and suffering.

72.   For the first seven days of confinement, Mr. El Badrawi was denied access to medication necessary to keep his Crohn's disease in abeyance, causing him internal bleeding and considerable pain.

73.   Defendant Loser knew or reasonably should have known Mr. El Badrawi was denied access to medication for his Crohn's disease.

74.   Defendant Loser acted with reckless disregard and deliberate indifference by recklessly leaving his medication at the ICE facility, which denied Mr. El Badrawi access to medication for his Crohn's disease.

75.   Defendant Lee, while Warden of the Hartford Correctional Center, knew or should have reasonably known that Mr. El Badrawi was being denied access to medication for his Crohn's disease for seven days.

76.   Defendant Lee, while Warden, acted with reckless disregard and deliberate indifference by failing to train and supervise prison officials to follow policies requiring prisoners' access to medication, and by tolerating their violations of these policies, which denied Mr. El Badrawi access to medication for his Crohn's disease for seven days.

**Denial of Mr. El Badrawi's Right to Free Exercise of Religion**

77.   Mr. El Badrawi is a practicing Muslim, and his arrest on October 29, 2004 fell on the sixteenth day of Ramadan.

78.   Ramadan is the holy Islamic month requiring Muslims to fast from dawn to sunset.

79.   The Hartford Correctional Center provided other Muslims at the facility an adequate meal schedule allowing them to fast from dawn to sunset.

80.   However, prison officials repeatedly rejected Mr. El Badrawi's request for a meal schedule allowing him to fast from dawn to sunset.

81.   The prison officials stated that since Mr. El Badrawi had arrived at the facility mid-way through the month of Ramadan, he could not be added to the special rolls accommodating the separate meal schedule.

82.   By refusing to provide him with the meal schedule necessary to fast during Ramadan, the prison officials denied Mr. El Badrawi the right to freely exercise his religion.

83.   During the first week of his detention, Mr. El Badrawi was forced to eat at the prescribed meal times.

84.   The denial of Mr. El Badrawi's medication for Crohn's disease—which caused him severe pain—further hindered his ability to fast.

85.   As a result, for the first time in his adult life, Mr. El Badrawi was unable to observe Ramadan, causing him severe distress.

86.    During the second week of his detention, Mr. El Badrawi did fast, aided by fellow inmates who took pity on him and brought him small amounts of food, such as an apple or a cookie, so that he could eat during non-meal periods, in violation of prison rules.

87.    Sometimes when his fellow inmates could not provide him food, Mr. El Badrawi's only late-night meal was a glass of water.

88.    Mr. El Badrawi's detention at the Hartford Correctional Center was a program or activity that receives Federal financial assistance.

89.    Defendant Lee, while Warden of the Hartford Correctional Center, had responsibility and oversight over the unlawful, excessive, and punitive manner in which Mr. El Badrawi was held in his facility.

90.    Defendant Lee, while Warden, knew or should have reasonably known that Mr. El Badrawi was being subjected to unlawful, excessive, and punitive detention conditions.

91.    Defendant Lee, while Warden, acted intentionally, knowingly, and/or with reckless disregard and deliberate indifference to the constitutional and legal rights of Mr. El Badrawi to be free from unlawful, excessive, and punitive detention conditions.

92.    Defendant Lee, while Warden, was personally involved in the violation of Mr. El Badrawi's constitutional and legal rights to be free from unlawful, excessive, and punitive detention conditions.

93.    Defendant Lee, while Warden, failed to act on information indicating Mr. El Badrawi's constitutional and legal rights were being violated.

94.    Defendant Lee, while Warden, acted with reckless disregard and deliberate indifference by failing to train and supervise prison officials to follow policies requiring prisoners the right to freely exercise their religion, and by tolerating their violations of these

policies, which denied and substantially burdened Mr. El Badrawi's right to freely exercise his religion and fast during the Muslim holy month of Ramadan.

**Immigration Hearings**

95.  On November 3, 2004, Mr. El Badrawi appeared before Immigration Judge Michael W. Straus in Hartford, Connecticut.

96.  At this hearing, Judge Straus pursued a line of questioning suggesting that Mr. El Badrawi was under suspicion for national security-related concerns.

97.  At this hearing, counsel for ICE claimed that because Mr. El Badrawi had remained in the United States after the October 2003 revocation of his visa, his application for an extension of stay was void, rendering Mr. El Badrawi removable pursuant to Immigration and Nationality Act ("INA") § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

98.  However, the DOS Certificate of Revocation specified that the revocation became effective *only* upon Mr. El Badrawi's departure from the country.

99.  The revocation never became effective, because Mr. El Badrawi did not leave the United States between June 1, 2003, and December 22, 2004.

100. At the hearing, the government also made the allegation, found in the NTA, that Mr. El Badrawi was out of status because he had remained in the United States past May 1, 2004, the date his H1-B authorization had expired.

101. Mr. El Badrawi contested this argument.  He pointed out that his employer, the University of Connecticut Health Center, had submitted a timely application for an extension of stay fewer than 240 days before.

102. Under immigration regulations, Mr. El Badrawi was permitted to stay and continue to work under his existing H1-B status for a 240-day period while the extension application was

- 14 -

pending or until it was denied. *See* 8 C.F.R. § 274a.12(b)(20); *see also* Memorandum from Michael A. Pearson, INS Executive Associate Commissioner, to Regional Directors, et al. (Mar. 3, 2000) (person's continued presence during pendency of application for extension of stay not "unlawful" under INA).

103. ICE Form I-213, signed by Defendant Loser, acknowledged that, as of the dates of his arrest and appearances in Immigration Court, Mr. El Badrawi's extension of stay application was still pending with DHS.

104. As of the date of his arrest and upon his appearance in Immigration Court, Mr. El Badrawi was within the 240-day period, work authorized and lawfully present in the United States.

105. ICE nevertheless refused to recognize Mr. El Badrawi's legal status and proceeded to prosecute removal proceedings, and to detain him without bond pending completion of those proceedings.

106. On November 10, 2004, Mr. El Badrawi again appeared before Judge Straus.

107. Eager finally to be free from his wrongful detention and the traumatic and punitive conditions of confinement, fearful because he had been falsely linked with national security concerns, and still not fully informed of his lawful immigration status, Mr. El Badrawi was persuaded to accept a "deal" in which he would be granted voluntary departure, a form of immigration relief which allows a person to voluntarily leave the United States within a certain number of days.

108. Mr. El Badrawi's acceptance of voluntary departure terminated the removal proceedings, effectively acquitting him of any insinuation of wrongdoing.

- 15 -

109. On November 10, 2004, Judge Straus ordered that Mr. El Badrawi be granted voluntary departure.

110. Judge Straus specified that Mr. El Badrawi should depart the country under DHS safeguards.

111. The DHS prosecutor verbally informed Mr. El Badrawi that he would leave the United States within six days.

112. Defendants Manack and Loser engaged in malicious prosecution and vexatious suit against Mr. El Badrawi.

113. Defendants Manack and Loser acted without probable cause or reason to believe an immigration violation had occurred and with malice in issuing and serving the warrant for arrest against Mr. El Badrawi and causing his arrest.

114. Defendants Manack and Loser acted without probable cause or reason to believe an immigration violation had occurred and with malice in issuing, serving, and filing the NTA and commencing the removal proceedings against Mr. El Badrawi.

115. Defendants Manack and Loser also abused the legal process in their actions against Mr. El Badrawi.

116. By issuing and serving warrant and NTA forms predicated on information they knew or should have known to be false, and refusing to release Mr. El Badrawi on bond, Defendants Manack and Loser deliberately misused the court process by authorizing Mr. El Badrawi's wrongful arrest, detention, and prosecution of removal proceedings.

**Mr. El Badrawi's Continued Detention Following the Voluntary Departure Deal**

117. Instead of being released within six days as the DHS prosecutor had indicated at the immigration hearing, Mr. El Badrawi was imprisoned at Hartford Correctional Center for forty-two additional days.

118. During this time, Mr. El Badrawi repeatedly sought to learn why he had continued to be detained.

119. Mr. El Badrawi's passport and other necessary documents were in order, and he made several requests to ICE officials, through his attorney, to help expedite his removal.

120. For example, Mr. El Badrawi offered to pay for a plane ticket on the earliest available flight to either country in which he has citizenship.

121. Despite these requests, ICE officials provided no justification for Mr. El Badrawi's needlessly prolonged detention.

122. Mr. El Badrawi was detained weeks longer than necessary to effectuate his removal from the United States without any legitimate immigration law enforcement purpose, and without evidence that he posed a danger or flight risk.

123. On December 22, 2004, ICE agents finally removed Mr. El Badrawi from Hartford Correctional Center, brought him to John F. Kennedy International Airport, and placed him on a flight.

124. When Mr. El Badrawi was finally permitted to leave, he had been detained by ICE officials for nearly two months without bond or release.

125. Defendants Manack and Loser authorized, and, by their unlawful actions, caused Mr. El Badrawi's unlawful detention for forty-two days after he had accepted voluntary departure.

126. Defendants Manack and Loser acted intentionally, knowingly, and/or with reckless disregard and deliberate indifference to Mr. El Badrawi's constitutional and legal rights to be free from imprisonment.

127. Defendants Manack and Loser knew or reasonably should have known that their actions violated Mr. El Badrawi's constitutional and legal rights to be free from imprisonment.

128. Defendants Manack and Loser knew or reasonably should have known that Mr. El Badrawi was being detained without any legitimate immigration law enforcement purpose, and without evidence that he posed a danger or flight risk.

**Irreparable Harm Suffered by Mr. El Badrawi**

129. There is a real and actual controversy between Plaintiff and Defendants, and Defendants' actions are the proximate cause of Plaintiff's injuries.

130. Mr. El Badrawi has suffered and continues to suffer harm, including irreparable harm, as a direct result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this court.

131. As a direct result of the unlawful actions of Defendants Manack and Loser, Mr. El Badrawi has suffered severe and lasting emotional and mental distress including but not limited to fear, depression, loss of reputation, and personal humiliation.

132. Defendants Manack and Loser intentionally inflicted emotional distress on Mr. El Badrawi.

133. By issuing and executing a warrant for his arrest that they knew or should have known was predicated on false information; detaining him without bond; and initiating removal proceedings against him, Defendants Manack and Loser knew or reasonably should have known that their unlawful actions would have resulted in Mr. El Badrawi experiencing the trauma of

arrest, detention with criminal suspects and convicts, denial of adequate medical care, interference with religious practice, and personal humiliation.

134. Defendants Manack and Loser further inflicted emotional distress by needlessly prolonging Mr. El Badrawi's detention for two months even after he had agreed to voluntary departure.

135. The conduct of Defendants Manack and Loser was extreme and outrageous, as it persisted even after Mr. El Badrawi notified the officials that the document they had presented concerning his visa revocation, together with his then-pending extension petition, confirmed his lawful status and work authorization.

136. The ordeal surrounding Mr. El Badrawi's wrongful arrest and detention as well as his excessively harsh conditions of confinement also created a traumatic experience for his family, particularly his mother.

137. Mr. El Badrawi also lost his job with the University of Connecticut Health Center as a result of his being coerced to leave the United States under false allegations.

138. Mr. El Badrawi continues to face adverse employment consequences because the U.S. government maintains and disseminates information and records about his unlawful arrest and detention as well as inaccurate investigatory records.

139. Information and records concerning Mr. El Badrawi's arrest and detention, and inaccurate investigatory records, appear in several federal databases, including the Treasury Enforcement Control System ("TECS"), a database maintained by Defendant DHS, and the National Crime Information Center ("NCIC") database, maintained by Defendant FBI.

140. Mr. El Badrawi faces future adverse consequences—including the potential for future arrest; the inability to pursue his profession in the United States, where he previously

worked, studied, and trained; and the denial of banking services—because Defendant FBI will likely disseminate false information in his NCIC record to law enforcement agencies, banking institutions, employers, and other public and private entities throughout the United States.

## FIRST CAUSE OF ACTION

## FOURTH AMENDMENT: SEIZURE

### (*BIVENS*)

141. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

142. By wrongfully arresting and detaining Plaintiff without probable cause, reason to believe an immigration violation had been committed, or valid justification, Defendants Manack and Loser, acting under color of law and their authority as federal officers, intentionally or recklessly seized Plaintiff in violation of the Fourth Amendment to the United States Constitution.

## SECOND CAUSE OF ACTION

## FIFTH AMENDMENT: DUE PROCESS

### (*BIVENS*)

143. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

144. By wrongfully arresting and detaining Plaintiff without probable cause, reason to believe an immigration violation had been committed, or valid justification, Defendants Manack and Loser, acting under color of law and their authority as federal officers, intentionally or recklessly deprived Plaintiff of his liberty without due process of law in violation of the Fifth Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION

### FREE EXERCISE

### (42 U.S.C. § 1983)

145. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

146. By refusing to provide Plaintiff an adequate meal schedule to allow him to fast as proscribed by his religion, Defendant Lee, acting under color of law and his authority as Warden of Hartford Correctional Center, intentionally or recklessly violated Plaintiff's right to free exercise of religion guaranteed to him under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION

### RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT OF 2000

### (42 U.S.C. §§ 2000cc, *et seq.*)

147. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

148. By refusing to provide Plaintiff an adequate meal schedule to allow him to fast as prescribed by his religion, Defendant Lee, acting under color of law and in his official capacity as Warden of Hartford Correctional Center, violated Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et seq*.

### FIFTH CAUSE OF ACTION

### DENIAL OF MEDICAL CARE

### (42 U.S.C. § 1983)

149. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

150. By denying Plaintiff his medication for Crohn's disease for seven days, Defendant Lee, acting under color of law and in his authority as Warden of Hartford Correctional Center, denied Mr. El Badrawi adequate medical care in violation of his right to due process guaranteed to him under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## SIXTH CAUSE OF ACTION

## FIFTH AMENDMENT: DENIAL OF MEDICAL CARE

### (*BIVENS*)

151. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

152. By denying Plaintiff his medication for Crohn's disease, Defendant Loser, acting under color of law and his authority as a federal officer, denied Mr. El Badrawi adequate medical care in violation of his right to due process guaranteed to him under the Fifth Amendment to the United States Constitution.

## SEVENTH CAUSE OF ACTION

## FIFTH AMENDMENT: DUE PROCESS

### (*BIVENS*)

153. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

154. By detaining Plaintiff weeks longer than necessary to secure his voluntary departure from the United States without any legitimate immigration law enforcement purpose, and without evidence that he posed a danger or flight risk, Defendants Manack and Loser, acting

under color of law and their authority as federal officers, intentionally or recklessly subjected Plaintiff to arbitrary and unlawful detention, depriving Plaintiff of his liberty without due process of law in violation of the Fifth Amendment to the United States Constitution.

## EIGHTH CAUSE OF ACTION

## FEDERAL TORT CLAIMS ACT

## (28 U.S.C. §§ 1346, 2671)

155. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

156. In issuing a warrant for his arrest, and arresting, confining, and prosecuting removal proceedings against Plaintiff—and in ignoring his rights under the Constitution and INA and inducing his departure from the United States—Defendant United States, through its employees, engaged in false arrest and imprisonment, malicious prosecution and vexatious suit, intentional infliction of emotional distress, and abuse of process in violation of the Federal Tort Claims Act, 28 U.S.C. §2671 *et seq*.

## NINTH CAUSE OF ACTION

## UNLAWFUL MAINTENANCE OF RECORDS

## (Expungement Action at Common Law)

157. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

158. Upon information and belief, Defendants FBI and DHS have entered and presently maintain records related to Mr. El Badrawi's arrest and detention, and inaccurate investigatory and other records, in the NCIC and TECS databases.

159. Upon information and belief, Defendants have entered and presently maintain records related to Mr. El Badrawi's arrest and detention in other databases and record systems.

160. The government may not retain records of arrests or detentions where the maintenance of such records would be fundamentally unfair, such as where the arrest or detention was illegal and unconstitutional, nor of inaccurate investigatory information the retention and dissemination of which cause injury to Mr. El Badrawi.

161. Mr. El Badrawi's arrest and detention violated the Fourth and Fifth Amendments to the United States Constitution, and the FTCA.

162. Maintenance and dissemination of records of Mr. El Badrawi's arrest and detention, and of inaccurate investigatory and other records relating to him, are fundamentally unfair and unlawful.

### TENTH CAUSE OF ACTION

### UNLAWFUL MAINTENANCE OF RECORDS

### (Expungement Action Under NCIC Statute, 28 U.S.C. § 534)

163. Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

164. Upon information and belief, Defendant FBI has entered and presently maintains records of Mr. El Badrawi's arrest and detention in the NCIC database.

165. In addition, Defendant FBI has entered and presently maintains a record relating to Mr. El Badrawi in the VGTOF portion of the NCIC.

166. Congress has authorized Defendant FBI to enter specified records into the NCIC database and disseminate them to prospective employers, law enforcement officials, and other public and private agencies.

167. Congress has not authorized Defendant FBI to enter records of persons subject to civil violations of immigration law into the NCIC database.

168. Congress has also not authorized Defendant FBI to enter inaccurate investigatory records into the NCIC database.

169. Defendant FBI's entry into the NCIC of records relating to the arrest and detention of Mr. El Badrawi pursuant to alleged civil violations of immigration law is arbitrary, capricious, and not authorized by the NCIC statute, 28 U.S.C. § 534.

170. Defendant FBI's entry into the NCIC VGTOF of inaccurate investigatory records regarding Mr. El Badrawi is arbitrary, capricious, and not authorized by the NCIC statute, 28 U.S.C. § 534.

171. Mr. El Badrawi is entitled to declaratory and injunctive relief ordering that records related to his unlawful arrest and detention, and inaccurate investigatory records in the VGTOF, be expunged from the NCIC.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1)   Assume jurisdiction over this matter;

2)   Declare that the Defendants' actions violated the Plaintiff's rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under the common law; and under the Federal Tort Claims Act;

3)   Declare that the Plaintiff's detention was unjustified, unconstitutional, unlawful, and without probable cause;

4)   Order the Defendants to return all records relating to the Plaintiff's unlawful arrest and detention and to expunge such records from government databases and otherwise destroy any records that cannot be returned;

5)   Order the Defendants to expunge any inaccurate or investigatory information regarding Plaintiff from the VGTOF portion of the NCIC database;

6)      Award the Plaintiff compensatory and punitive damages in an amount that is fair, just, reasonable, and in conformity with the evidence;

7)      Award the Plaintiff reasonable attorneys' fees and costs; and

8)      Grant any other relief the Court deems just and equitable.


Dated July 13, 2007
New Haven, Connecticut


                              Respectfully submitted,


                              Michael Wishnie, Esq., Federal Bar. No. ct27221


                              Hope Metcalf, Esq., Federal Bar No. ct27184
                              Sameer Ahmed, Law Student Intern
                              Bram Elias, Law Student Intern
                              Adam Goldfarb, Law Student Intern
                              Benjamin Siracusa, Law Student Intern
                              ALLARD K. LOWENSTEIN INTERNATIONAL
                              HUMAN RIGHTS CLINIC
                              NATIONAL LITIGATION PROJECT
                              127 Wall Street
                              New Haven, Connecticut 06510
                              Phone: (203) 432-9122

                              Counsel for Plaintiff


On the Complaint:

Daniel Freeman, J.D. awarded June 2007