## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RASHAD AHMAD REFAAT EL BADRAWI, :
  Plaintiff,       :
            :  CIVIL ACTION NO.
  v.          :  07-cv-1074 (JCH)
            :
DEPARTMENT OF HOMELAND   :
SECURITY, ET AL.,      :  JULY 24, 2009
  Defendants.      :

### RULING RE: PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 107)

## I. INTRODUCTION[1]

On February 9, 2009, plaintiff Rashad Ahmad Refaat El Badrawi moved to compel the production of certain documents from defendants Charles Lee, Warden, Hartford Correctional Center, and the United States of America (the "government"). See Motion to Compel (Doc. No. 107). Both Warden Lee and the government objected to El Badrawi's Motion, arguing that the documents at issue are exempt from discovery because, inter alia, they are not relevant and they are protected from disclosure by the law enforcement privilege. See Defendants' Opposition to Plaintiff's Motion to Compel (Doc. Nos. 112, 118). On April 30, 2009, the court heard argument on the Motion. See Minute Entry (Doc. No. 137). Following argument, the court reviewed, ex parte and in camera, both the documents sought by El Badrawi and a classified declaration provided by the government in support of its opposition. For the reasons discussed herein, El Badrawi's Motion to Compel is granted in part and denied in part.

---

[1] The court assumes familiarity with the basic facts of this case, which were set out in detail in the court's Ruling Re: Defendants' Motions to Dismiss or for Summary Judgment (Doc. No. 82).

## II.    STANDARD OF REVIEW

A district court has broad discretion to manage pre-trial discovery.  See Wood v. FBI, 432 F.3d 78, 84 (2d Cir. 2005).  Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Relevance" is broadly defined in the discovery context.  See id. ("Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence").  Moreover, "[s]ince the normal presumption in civil cases is in favor of broad discovery," a resisting party's case for non-disclosure must be "extremely persuasive."  Conte v. County of Nassau, 2009 U.S. Dist. LEXIS 41348 (E.D.N.Y. May 15, 2009) (internal quotations omitted).

## III.   BACKGROUND

### A.  El Badrawi's First Request for Production

On December 5, 2008, El Badrawi sent requests for production to both Warden Lee and the government.  The request to Warden Lee sought "all documents . . . that relate to Plaintiff El Badrawi from the National Crime Information Center (NCIC), including but not limited to the NCIC printout generated when Mr. El Badrawi was transferred to the Hartford Correctional Center on or about October 29, 2004."  See Plaintiff's First Request for Production to Warden Lee at 5, Exh. 10 to Motion to Compel (Doc. No. 107).  The request to the United States sought "all documents and electronically stored information . . . that relate to Plaintiff El Badrawi from the National Crime Information Center (NCIC), including but not limited to any information in the

Violent Gang and Terrorist Organization File (VGTOF)."  <u>See</u> Plaintiff's First Request for

Production to the United States at 5, Exh. 11 to Motion to Compel (Doc. No. 107).

        Both Warden Lee and the government objected to El Badrawi's request for NCIC

documents on the grounds of relevance, privilege, and various state and federal

statutes.  <u>See</u> Warden Lee's Response to Plaintiff's First Request for Production, Exh.

12 to Motion to Compel (Doc. No. 107); United States' Response to Plaintiff's First

Request for Production, Exh. 13 to Motion to Compel (Doc. No. 107).  In connection

with its invocation of the law enforcement privilege, the United States produced a

privilege log stating that three NCIC printouts exist from 2004.[2]  <u>See</u> Privilege Log (Doc.

No. 112-3).  On February 9, 2009, El Badrawi filed the instant Motion, challenging the

defendants' objections.

        B.  <u>The NCIC and the VGTOF</u>

        The NCIC is a nationwide, computerized information system operating under

shared management between the Federal Bureau of Investigation ("FBI") and state and

local criminal justice communities, with the FBI functioning as the national manager.

<u>See</u> March 13, 2009 Declaration of Arthur M. Cummings ("Cummings 3/13/09 Decl.")

(Doc. No. 112-2), at ¶ 4.

        The NCIC's computerized database contains 18 files: seven property files and 11

person files.  <u>See id.</u>  The VGTOF is a person file which provides law enforcement

_____

        [2] It bears noting that the mere existence of NCIC printouts pertaining to El Badrawi does not
necessarily mean El Badrawi is listed in the NCIC.  <u>See</u> United States' Memorandum in Opposition of
Plaintiff's Motion to Compel ("U.S. Mem. in Opp.") (Doc. No. 112) at 16.  "When a law enforcement officer
checks a name to see if there is information about a person in the NCIC database, a printout is
generated showing a positive or negative response.  Thus, the mere fact that an NCIC printout exists for El Badrawi
does not reveal whether there is information about him in VGTOF; it merely indicates that his name was
queried."  <u>Id.</u>

personnel with identifying information about violent gangs and terrorist organizations, and the known or suspected members/associates of these gangs and organizations. See id.  Since January 2002, records of all known or suspected terrorist subjects have been entered into the VGTOF.  See id. at ¶ 9.  The information contained in VGTOF is used in counterterrorism and criminal investigations conducted by the FBI, see id. at ¶ 5, and serves to warn law enforcement officers of the potential danger posed by violent individuals, see id. at ¶ 9.

It is the FBI's longstanding policy to neither confirm nor deny whether an individual is listed in the VGTOF because "VGTOF maintains its effectiveness as a law enforcement tool only if the identities of individuals listed in VGTOF are not disclosed." See id. at ¶ 12.

## IV.    DISCUSSION

### A.   Motion to Compel as to United States

El Badrawi seeks to compel the production of two categories of documents from the United States: (1) the 2004 NCIC printouts that are described in the government's privilege log; and (2) the current electronic NCIC entry for El Badrawi, if any.  The United States argues that these documents are not subject to discovery because they are not relevant to any party's claim or defense and because they are protected under the law enforcement privilege.  The court addresses each argument separately.

#### 1.   Relevance of NCIC Printouts

Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  The

government argues that neither the 2004 NCIC printouts, nor El Badrawi's current NCIC entry, if any, are relevant to any party's claim or defense.  The court disagrees.

After the court's Ruling Re: Defendants' Motions to Dismiss or for Summary Judgment (Doc. No. 82), there remain three claims against the United States and three claims against the State defendants.[3]  El Badrawi's claims against the United States are: (1) false arrest/false imprisonment; (2) abuse of process; and (3) intentional infliction of emotional distress.  His claims against the State defendants are: (1) violation of the First Amendment's Free Exercise Clause, brought pursuant to 42 U.S.C. § 1983; (2) violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); and (3) violation of the Fourteenth Amendment's Due Process Clause for the denial of medical care, brought pursuant to 42 U.S.C. § 1983.  The court finds that the documents El Badrawi seeks from the United States are relevant to, inter alia, his abuse of process and due process claims.

a.  Relevance of NCIC Documents to Abuse of Process Claim.  Under Connecticut law, an action for abuse of process lies against any person who uses a legal process against another in an improper manner or to accomplish a purpose for which it was not designed.  See Doctor's Assocs. v. Weible, 92 F.3d 108, 114 (2d Cir. 1996).  In this case, El Badrawi's abuse of process claim is based on the allegation that the United States detained El Badrawi after he voluntarily agreed to leave the United States for some reason other than to "ensure [his] timely departure from the United

_____

[3] Along with Warden Lee, El Badrawi brings suit against Albert Pitts, Chaplain of the Hartford Correctional Center, and Thomas McGrail, Director of Food Services at the Hartford Correctional Center. The court refers to Lee, Pitts, and McGrail, collectively, as the "State defendants."

States." See Mem. in Supp. at 21.  Specifically, El Badrawi alleges that he may have been improperly detained after agreeing to leave the United States in order for the government to continue investigating him under Operation Frontline,[4] or for other national security reasons.  See id.  Therefore, El Badrawi argues, the NCIC records are relevant because they may contain information establishing that government officials believed El Badrawi was a national security threat, or information relating to an improper investigation of El Badrawi after he agreed to voluntary departure, and thus the documents may corroborate or help prove that El Badrawi's detention was prolonged for impermissible reasons.  See id. at 22.  The court agrees.

Under Federal Rule of Civil Procedure 26(b)(1), "relevance" has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  Sedona Corp. v. Open Solutions, Inc., 249 F.R.D. 19, 21 (D. Conn. 2008).  Both the 2004 NCIC printouts and the current NCIC entry, if any, reasonably could lead to other matters that bear on the reason El Badrawi was detained for 42 days after agreeing to voluntary departure.  Therefore, both the 2004 NCIC records and the current NCIC entry, if any, are relevant to El Badrawi's abuse of process claim.

The United States argues that the NCIC records relating to El Badrawi  are not relevant to his abuse of process claim because, inter alia, to the extent they exist, they

---

[4] Operation Frontline was an United States Immigration and Customs Enforcement ("ICE") program initiated in the runup to the 2004 election designed to arrest and detain certain immigration violators deemed to be national security threats.  See Ruling Re: Defendants' Motions to Dismiss or for Summary Judgment (Doc. No. 82) at 4.

would not document any aspect of El Badrawi's immigration detention.  See U.S. Mem. in Opp. at 9-10.  Such argument is unpersuasive.  Under the Federal Rules, a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.  See Fed. R. Civ. P. 26(b)(1).  A party seeking discovery of relevant, nonprivileged documents need not rely on an opposing party's assurance that the documents in question do not contain the information sought.  Rather, the party seeking discovery is entitled to obtain the discovery and draw its own conclusions as to the documents' usefulness.

   b.  Relevance of NCIC Documents to Due Process Claim.  El Badrawi's Fourteenth Amendment due process claim is based on the State defendants' alleged failure to provide him with medicine for Crohn's disease, a condition which causes inflammation of the gastrointestinal tract and can result in severe pain if left untreated. See Amended Complaint (Doc. No. 83) at ¶¶ 69-79.

   To prevail on a denial of medical care claim, a plaintiff must prove: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  See Estelle v. Gamble, 429 U.S. 97, 103-104 (1976). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-838 (1994).

   El Badrawi argues that the 2004 NCIC printouts are relevant to his due process claim because they shed light on the State defendants' state of mind.  See Mem. in Supp. at 15.  Specifically, he argues that, if the 2004 NCIC printouts indicate that the government believed El Badrawi to be a member of a terrorist organization, a

reasonable person could infer that the state of mind of any State defendant who saw the printouts was affected by that information.  See id.  Further, because such an inference would tend to prove El Badrawi's theory that he was intentionally or recklessly denied medical care due to his status as a possible terrorist, El Badrawi argues that the 2004 NCIC printouts are relevant to his due process claim.  The court agrees.  The 2004 NCIC printouts reasonably may lead to matters that could bear on the reason El Badrawi was not given access to his medication and are therefore relevant under Rule 26.  See Sedona Corp. v. Open Solutions, Inc., 249 F.R.D. 19, 21 (D. Conn. 2008).

It bears noting that Warden Lee argues that the 2004 NCIC printouts are not relevant to El Badrawi's due process claim because El Badrawi's theory connecting the printouts to his inability to access his Crohn's medication is too attenuated.  Specifically, Warden Lee asserts that:

> Plaintiff has sought disclosure of [the 2004 NCIC printouts] before establishing through depositions or interrogatories that any of the named defendants were even aware in October and early November 2004 that Mr. El Badrawi existed; that he was detained at HCC; that they knew anything in particular about him during the relevant time period; including but not limited to whether he was on any NCIC list, a practicing Muslim and required medical attention.

State Mem. in Opp. (Doc. No. 118) at 2-3.  This argument is unpersuasive.  First, El Badrawi has submitted to the court his Inmate Classification Form, signed by "C. Lee" in the "Warden Action" section of the form, which indicates that Warden Lee was aware of El Badrawi's presence at the Hartford Correctional Center at least as early as November 1, 2004.  See Inmate Classification Form, Exh. 15 to Declaration of Daniel Mullkoff ("Mullkoff Decl.") (Doc. No. 107-16).  Second, El Badrawi has submitted the testimony of Joan Ellis, Freedom of Information Administrator for the Connecticut

Department of Corrections, who stated under oath that NCIC records, especially those showing allegations of serious crimes, "would affect . . . how someone would be housed" in a Department of Corrections facility.[5]  Testimony of Joan Ellis at 32, Exh. 14 to Mullkoff Decl.  Finally, as the court noted at argument, the Federal Rules of Civil Procedure do not require a plaintiff to prove his case before he can receive discovery. Consequently, the court finds that the 2004 NCIC records are relevant to El Badrawi's due process claim.

### 2.  Law Enforcement Privilege

The government argues that the NCIC records El Badrawi seeks are protected from disclosure by the law enforcement privilege.  The law enforcement privilege is a qualified executive privilege designed "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation."  In re Dep't of Investigation, 856 F.2d 481, 484 (2d Cir. 1988); see also In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988).

To establish the law enforcement privilege, a party invoking it must meet certain threshold requirements: (1) a formal claim of privilege must be lodged by the head of the department which has control over the requested information; (2) assertion of the

---

[5] At argument, counsel for the State defendants questioned the accuracy of Ellis' testimony, noting that Ellis is a Freedom of Information Act officer at the Department of Corrections and may not be intimately involved in classification of inmates.  As El Badrawi's counsel pointed out, however, Ellis testified under oath as a representative of the Commissioner of the Connecticut Department of Corrections.  See Testimony of Joan Ellis at 18, Exh. 14 to Mullkoff Decl.  Further, the State defendants have not pointed to any evidence in the record which would cause the court to question Ellis' testimony.

privilege must be based on actual personal consideration of the matter by that official; and (3) the claim must specify, with particularity, the information for which the privilege is invoked, and must explain why it falls within the scope of the privilege.  See id. at 271.  "The threshold requirements are needed to provide a court with the information necessary to make a reasoned assessment of the weight of the interests against and in favor of disclosure and to provide a plaintiff a fair opportunity to challenge the bases for the assertion of the privilege."  United States v. Painting, 2008 U.S. Dist. LEXIS 49171 (S.D.N.Y. June 25, 2008).

Because the law enforcement privilege is a "qualified" privilege, see Conte v. County of Nassau, 2009 U.S. Dist. LEXIS 41348 (E.D.N.Y. May 15, 2009), once the threshold requirements are met, "[t]he court must balance the interests favoring and disfavoring disclosure, keeping in mind that the burden of persuasion rests on the party seeking to prevent disclosure."  Macnamara v. City of New York, 249 F.R.D. 70, 79 (S.D.N.Y. 2008).  Further, "[t]he court must also consider the value of appropriate protective orders and redactions."  Id.

In balancing the interests favoring and disfavoring disclosure, courts consider a number of factors.  Factors favoring disclosure include, inter alia, the relevance of the requested materials and their importance to the plaintiff's case, the strength of the plaintiff's case, and the importance to the public interest.  See King v. Conde, 121 F.R.D. 180, 195-96 (E.D.N.Y. 1988).  Factors disfavoring disclosure include, inter alia, the threat to the safety of law enforcement personnel, the invasion of privacy, the weakening of law enforcement programs, any chilling effect on internal investigative candor and citizen complainant candor, and state privacy law.  See id. at 191-95.

-10-

In this case, the court finds that the government has met the threshold requirements as set forth in In re Sealed Case, 856 F.2d 268, 272 (D.C. Cir. 1988). The United States has submitted two Declarations of Arthur M. Cummings, II, Executive Assistant Director of the FBI's National Security Branch, asserting a formal claim of privilege over the NCIC records at issue.[6]  See 3/13/2009 Cummings Decl. at ¶ 3. Cummings has stated that his assertion of the law enforcement privilege is "based upon [his] personal knowledge, [his] review and consideration of documents and information available to [him] in [his] official capacity, and information furnished by Special Agents and other employees of the FBI."  See id. at ¶ 2.  Finally, the court finds that, together, the two Cummings Declarations have specified, with particularity, the information for which the law enforcement privilege is invoked, and explained why that information falls within the scope of the privilege.  Thus, having found that the government has met the threshold requirements, the court turns to the balancing of the interests favoring and disfavoring disclosure.

While the court has thoroughly considered all the factors set forth in King v. Conde, 121 F.R.D. 180, 195-96 (E.D.N.Y. 1988), the court finds that, in this case, two factors hold overwhelming importance.  Accordingly, the court limits its discussion to the importance to the public interest and the weakening of law enforcement programs.

a.  The Importance to the Public Interest.  The public interest that "without a doubt looms largest" in this case "is the public interest in giving force to the federal civil rights laws."  Id. at 195.  This is because "[t]hrough constitutional amendment and

_____

[6] In addition to the March 13, 2009 Cummings Declaration, the government submitted a second, classified Cummings Declaration which the court reviewed ex parte and in camera.

-11-

national legislation the people have made it clear that the policies that inform the federal civil rights laws are profoundly important." Id. (internal quotation and citation omitted). Further, lawsuits brought pursuant to 42 U.S.C. § 1983 require special attention to full disclosure because in section 1983 suits:

> Each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution. Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all. Thus, it is of special import that suits brought under this statute be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

Id. (internal quotation and citation omitted). Such considerations are particularly important in this case. El Badrawi alleges that the government illegally arrested and imprisoned him, improperly detained him for 42 days beyond the time he agreed to voluntarily leave the United States, and intentionally inflicted severe emotional distress upon him. He further alleges that officials of the State of Connecticut violated fundamental rights guaranteed to him by the First and Fourteenth Amendments to the Constitution of the United States, as well as rights guaranteed to him by federal statute. These claims have survived defendants' well-crafted and zealously-advocated Motions to Dismiss and Motions for Summary Judgment, and are clearly not frivolous. If his claims are found to have merit, El Badrawi's suit will have exposed extreme and outrageous conduct on the part of "those who are charged with policing us all," and thereby guarded, for all of us, the individual liberties enunciated in the Constitution. Id. Therefore, the court finds that it is of special import that this case be resolved by "a determination of the truth rather than by a determination that the truth shall remain hidden." Id. This finding weighs heavily in favor of disclosure.

b. <u>The Weakening of Law Enforcement Programs</u>.  The government's primary argument against producing the NCIC documents is that disclosure of would significantly harm law enforcement investigations and techniques.  <u>See</u> U.S. Mem. in Opp. at 13.  Specifically, Cummings explains that:

> If an individual who is included in the VGTOF or any other national security screening-agency database is informed of that fact, this disclosure would likely compromise any ongoing FBI investigation of that individual or terrorist cell.  Subjects armed with such knowledge will naturally tend to alter their behavior, taking new precautions against surveillance and changing their level of terrorism-related activity.  For example, after realizing that he was under suspicion, a subject might alter his appearance, acquire identification in another name to evade detection, or distance himself from co-conspirators who have not yet come to the attention of counter-terrorism officials.  In addition, this knowledge might enable subjects to anticipate the activities and reaction of law enforcement officers, perhaps conducting counter-surveillance activities that could place federal agents at greater risk.  Finally, by becoming aware of the fact that he/she is included within the VGTOF file, there is a danger that an individual could deduce that a confidential informant has infiltrated a particular terrorist cell.  This knowledge could result in, at worst, the death of the informant, or, at best, the compromise of an ongoing terrorist investigation.

Cummings 3/13/09 Decl. at ¶ 12.

As the government points out, this court recognized in a related Freedom of Information Act ("FOIA") suit that "significant harm . . . would result if members of terrorist organizations were able to confirm whether they are listed in VGTOF."  <u>See</u> Ruling Re: <u>In Camera</u> Review (Doc. No. 129) in <u>El Badrawi v. Dep't Homeland Security, et al.</u>, 07-cv-372 (JCH).  In the context of FOIA, the court found the argument advanced in the March 13, 2009 Cummings' Declaration persuasive, and thus held that, in response to a FOIA request, the FBI had properly refused to confirm or deny whether El Badrawi was listed in the VGTOF.

The present suit, however, is not a FOIA case, and FOIA exemptions do not

apply.  See Baldrige v. Shapiro, 455 U.S. 345, 360 (1982) ("Most courts have

concluded that a FOIA exemption does not automatically constitute a 'privilege' within

the meaning of the Federal Rules of Civil Procedure"); Washington Post Co. v. United

States Dep't of Health & Human Services, 690 F.2d 252, 258 (D.C. Cir. 1982) ("It is well

established that information that is exempt from disclosure to the general public under

FOIA may nevertheless be subject to discovery").  Thus, the question before the court

is not what harm may result if any member of the general public were able to confirm

whether he or she is listed in the NCIC, but rather, what harm may result if El Badrawi

were able to confirm whether he is, or was, listed in the NCIC.

The government would have the court conflate the two questions.  It paints a

picture that, at first sight, appears extremely troubling: a slippery slope from the court-

ordered production of NCIC documents in one civil rights lawsuit to a world in which any

terrorist who comes into contact with U.S. government officials is able to access the

nation's most closely-guarded national security secrets by filing a section 1983 lawsuit.

This picture, however, is flawed.  The government omits the fact that, in order to obtain

discovery over the government's assertion of the law enforcement privilege, a plaintiff

typically must first survive a motion to dismiss (as did El Badrawi in this case) and then

convince a judge that a balancing of interests favors disclosure.  As the dearth of cases

in which judges have ordered production over the government's assertion of the law

enforcement privilege demonstrates, this is not an easy hurdle for a plaintiff to

overcome.  Consequently, the court finds the government's slippery slope argument

unpersuasive.

That said, however, the court must still consider whether harm other than the

slippery slope type may result if El Badrawi were able to confirm whether he is, or was, listed in the NCIC.  To this end, it bears noting that this court recognizes that "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself," and that "what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context."  CIA v. Sims, 471 U.S. 159, 178 (1985).  With this in mind, the court reviewed the documents in question ex parte and in camera.

After reviewing the documents and considering the submissions of both El Badrawi and the government (including the classified Cummings Declaration), the court finds that the disclosure of certain information in the documents could reasonably lead to harm of the type Cummings describes in his March 13, 2009 Declaration.[7]  See Cummings 3/13/09 Decl. at ¶ 12.  With respect to the remainder of the information in the documents, however, the court finds that the government has not demonstrated that the disclosure of such information could reasonably be expected to lead to threats to the safety of law enforcement personnel, the invasion of privacy, the weakening of law enforcement programs, or any chilling effect on internal investigative candor or citizen complainant candor.

As a result, the court finds that, after balancing the interests in favor of disclosure and those against, with regard to the majority of the information contained in the

---

[7] The court has set forth the reasons for this particular finding, in detail, in a Supplement to this Ruling.  The Supplement will undergo classification review and, if possible, a redacted version will be made available on the docket.

documents El Badrawi seeks, the importance of the public interest outweighs the interests disfavoring disclosure.  Nevertheless, the court finds that the documents contain some information in which the interests balance in the opposite direction, and therefore the court finds that portions of the documents El Badrawi seeks are protected by the law enforcement privilege, and need not be disclosed.

       3.  <u>Production Procedure</u>

Because the court has found that the law enforcement privilege applies only to portions of the documents El Badrawi seeks from the United States, the government shall disclose the documents in redacted form.  The court will highlight the privileged portions of the documents and give the highlighted documents to government's representative.  Government's counsel shall redact the highlighted sections and disclose the redacted documents to El Badrawi's counsel no later than August 10, 2009.

Further, due to the legitimate concerns of the government regarding the sensitivity of the documents, the redacted documents shall be designated "Protected Documents" per the court's Protective Order (Doc. Nos. 139, 159).

      B.  <u>Motion to Compel as to Warden Lee</u>

El Badrawi seeks to compel the 2004 NCIC printout from Warden Lee.  <u>See</u> Mem. in Supp. at 2.  Both the government and El Badrawi have acknowledged that the 2004 printout in Warden Lee's possession is, for the most part, equivalent to the 2004 printouts held by the government.  <u>See</u>  E-mails, Exh. 9 to Motion to Compel (Doc. No. 107).  The records, however, are not identical.  To the extent Warden Lee's 2004 NCIC printout contains information the court determined to be protected by the law

enforcement privilege in the government's printouts, such information is likewise protected from disclosure by the State.  To the extent the Warden Lee's 2004 NCIC printout contains information the court determined to be discoverable in the government's printouts, such information is likewise discoverable from the State.  To the extent Warden Lee's printout contains information not contained in the government's printouts, such information was not addressed by the classified Cummings Declaration and therefore the court has not conducted the requisite balancing inquiry as to that information.  Consequently, the State (and/or the government) has until August 10, 2009 to submit any further objection (supported by affidavit) to the disclosure of the State's 2004 NCIC printout with the same redactions as the government's.

## V.      CONCLUSION

For the foregoing reasons, plaintiff's Motion to Compel (Doc. No. 107) is **GRANTED** in part and **DENIED** in part.  Defendant United States of America shall disclose the redacted documents to plaintiff's attorneys by August 10, 2009.  The redacted documents shall be designated "Protected Documents" per the court's Protective Order (Doc. Nos. 139, 159).

**SO ORDERED**.

Dated at Bridgeport, Connecticut, this 24th day of July, 2009.


 /s/ Janet C. Hall
Janet C. Hall
United States District Judge