UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RASHAD AHMAD REFAAT EL BADRAWI, | : : | CIVIL ACTION NO. 3:07-cv-01074 (JCH) |
| Plaintiff, | : : | |
| v. | : : | SEPTEMBER 29, 2009 |
| DEPARTMENT OF HOMELAND SECURITY, ET AL., | : : : | |
| Defendants. | : | |

**RULING RE: MOTION TO MODIFY PROTECTIVE ORDER**

Plaintiff, Rashad Ahmad Refaat El Badrawi, brings this Motion to Modify the Protective Order entered by this court on April 30, 2009, and amended on July 13, 2009. El Badrawi requests that the court modify the Protective Order in order to allow his counsel to refer, in its representation of a different client in a separate litigation currently pending before the Second Circuit, to a document subject to the Order and which document was disclosed to counsel in its capacity as El Badrawi's legal representative in this matter.

**I.    BACKGROUND**

El Badrawi brought this action against several federal and state defendants for actions surrounding his arrest and detention on suspected immigration violations. In brief, El Badrawi claims that agents of the U.S. Immigration and Customs Enforcement ("ICE") arrested him in October 2004, even though he was in a lawful immigration status. Following his arrest, El Badrawi was incarcerated in a state corrections center, where he claims that he was denied the ability to practice his religion and denied access to adequate medical care. Ultimately, El Badrawi agreed to voluntarily depart the United States immediately. However, El Badrawi claims that, in order to continue

investigating him, federal officials did not remove him and delayed his release. El Badrawi was removed from the United States on December 22, 2004, more than forty days after he had agreed to voluntary departure. In this civil action, El Badrawi chiefly seeks monetary damages to compensate him. He also seeks to force several federal agencies to expunge certain records that they maintain against him. The current Motion arises from a set of circumstances related to discovery in this action.

    A.    <u>Discovery in the Present Civil Action</u>

Discovery in this civil action is currently ongoing and is scheduled to conclude on October 31, 2009. Information responsive to El Badrawi's discovery demands has been identified by the United States as containing sensitive and confidential law enforcement information regarding the policies, methods, techniques, procedures, guidelines, and intelligence of certain federal law enforcement agencies. In order to simultaneously protect against the disclosure of this information, while at the same time observing the requirements of Rule 26 of the Federal Rules of Civil Procedure, the court issued a Standing Protective Order (Doc. No. 139) on April 30, 2009, that allowed the government to designate certain documents as "confidential" for purposes of this litigation. The court issued a Modification of Protective Order (Doc. No. 159) on July 13, 2009 ("Protective Order," "Order," or "Attorneys-Only Protective Order") that allows the government to designate certain documents and information as "highly confidential" for purposes of this litigation. Once designated as highly confidential, the disclosed information is subject to numerous conditions that limit the use of the information. <u>See</u> Modification of Protective Order at 2-7 (enumerating conditions). Specifically, the Order provides that El Badrawi's counsel shall use any information designated as highly

confidential and subject to the Attorneys-Only Protective Order "solely for the purposes of this litigation and no other." Id. at 3.

  B.  <u>Release of Bates Nos. 284-286</u>

The document that is the subject of this Motion, Bates Nos. 284-86, was released to El Badrawi's attorney pursuant to the Protective Order after a long sequence of discovery steps. On February 27, 2009, plaintiff submitted a discovery request for all documents relating to Operation Frontline policies and procedures; Bates Nos. 284-86 is included within the scope of that request. <u>See</u> Doc. No. 177, Ex. 9 at 5. The United States objected to this request. At a hearing before the court on June 18, 2009, the court instructed the United States to deliver the document in question for <u>in camera</u> review, or otherwise disclose the information to El Badrawi. <u>See</u> Tr. of Hearing (6/18/09) at 59-60.

At the time of the June 18 hearing, El Badrawi's counsel was (and continues to be) counsel of record in another matter, <u>Lowenstein v. Department of Homeland Security</u>, 603 F. Supp. 2d 354 (D. Conn. 2009), appeal pending, 06-cv-01889 (2d Cir.), in which the protected document was also at issue. Although the appeal to the Second Circuit in <u>Lowenstein</u> had been filed at the time, El Badrawi's counsel did not raise the issue of being permitted to use Bates Nos. 284-86 in that separate litigation at the June 18, 2009 hearing in this case. <u>See</u> Pl.'s Mot. to Modify Protective Order (Doc. No. 180), Exh. 1 (<u>Lowenstein</u> Notice of Appeal to Second Circuit, dated May 22, 2009).

On June 30, 2009, the United States moved to extend the two-week deadline for asserting privilege because ICE decided to release, "under an appropriate protective order, documents describing the priority level that was assigned to El Badrawi for

-3-

Operation Frontline," and additional time would enable the parties to resolve the discovery dispute themselves.  See Doc. No. 156.  After the subsequent modification of the Protective Order by the court on July 13, 2009, the United States released the document in question to El Badrawi's attorney.  See Mem. in Opp. to Mot. to Modify Protective Order (Doc. No. 192) at 4.

      C.      The Lowenstein Litigation

El Badrawi's counsel is currently also representing the Allard K. Lowenstein Project on Human Rights and the Jerome N. Frank Legal Services Organization in Lowenstein v. Department of Homeland Security, a case in which those organizations have brought a Freedom of Information Act ("FOIA") claim against the Department of Homeland Security and other federal agencies.  Lowenstein, 603 F. Supp. 2d at 354.  El Badrawi is not a party to the Lowenstein matter.  Id.  In a Ruling entered on March 20, 2009, Judge Kravitz of the District of Connecticut denied the FOIA claim because "release of that information would disclose law enforcement techniques and could be of assistance to those who wish to evade future immigration enforcement operations."  Id. at 365.

On May 22, 2009, the Lowenstein plaintiffs filed a Notice of Appeal.  The sole issue before the Second Circuit on appeal is the disclosure of the document marked Bates Nos. 284-86.  See Pl.'s Mot. to Modify Protective Order at 1.  El Badrawi's attorney contends that the document has already been filed with the Second Circuit as part of the Lowenstein appellate record.  See id. at 2.  However, the United States asserts that it has not yet submitted the document which is Bates Nos. 284-86 for in camera review and does not intend to submit that document  "unless it is deemed

necessary by the particular panel reviewing the case." Mem. in Opp. to Mot. to Modify Protective Order at 4.

    D.    <u>Motion to Modify Protective Order</u>

On September 1, 2009, El Badrawi filed its Motion to Modify Protective Order in this case. El Badrawi requests that his attorney be allowed to reference Bates Nos. 284-86 -- a document released by the United States under the protection of the Protective Order and made available to plaintiff's counsel only on account of his representation of Mr. El Badrawi -- in its briefing to the Second Circuit in <u>Lowenstein</u>. As El Badrawi's counsel recognizes, even though counsel has seen the document in question, such use of the document in connection with the <u>Lowenstein</u> appeal would violate the Protective Order in this case as it currently stands.

**II.    DISCUSSION**

Where a party has reasonably relied on the assurances provided in a Rule 26(c) protective order, a District Court should not modify that order "absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." <u>Martindell v. Int'l Tel. & Tel. Corp.</u>, 594 F.2d 291, 296 (2d Cir. 1979); <u>see</u> <u>also</u> <u>S.E.C. v. TheStreet.com</u>, 273 F.3d 222, 234 (2d Cir. 2001) (determining that the <u>Martindell</u> standard creates a strong presumption against public access where it is established that the party claiming privacy has reasonably relied on the protective order).

The government argues that the presumption against modification should apply here because, had they considered the fact that Bates Nos. 284-86 could potentially be exempted from the Protective Order, they "might well have chosen to litigate the law

enforcement privilege, particularly given that this document does not mention, identify, or relate to Plaintiff El Badrawi or his claims in this tort case." Mem. in Opp. to Mot. to Modify Protective Order at 9. El Badrawi contends, however, that the government did not reasonably rely on the Protective Order in disclosing the materials, and instead produced the document "based on this Court ordering it to do so." See Pl.'s Mot. to Modify Protective Order at 2, 3. Therefore, El Badrawi argues, the presumption against modification should be eschewed in favor of the more lenient standard used to evaluate the appropriateness of modification where no reasonable reliance is present. See Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 n. 7 (2d Cir. 2004) ("If reliance would be unreasonable, it is within the discretion of the court to vacate or modify a protective order.").

There is support in the record for the government's assertion that they reasonably relied on the Protective Order. Contrary to El Badrawi's assertion that this court "ordered" disclosure, this court offered the government two options: (1) disclose the materials, or (2) produce the materials for in camera review in anticipation of a ruling. See Tr. of Hearing (6/18/09) at 59-60. The court indicated that the government could file an affidavit to support its position against disclosure if it elected to do so. Furthermore, the government only decided to disclose the materials and *not* opt for in camera review "after seeking and obtaining for this purpose the Modified Protective Order . . . entered by this Court on July 13, 2009." Mem. in Opp. to Mot. to Modify Protective Order at 4. Given this sequence of events, this case is dissimilar to precedent in which courts have declined to apply the presumption against modifying a protective order because the parties could not have reasonably relied on it. See, e.g.,

S.E.C. v. TheStreet.com, 273 F.3d at 234 (declining to apply presumption against modification where depositions in question where taken prior to entry of relevant protective order because depositions "could not have been given in reasonable reliance on that order").  Therefore, because the government reasonably relied on the Order, the court must find "extraordinary circumstances" or a "compelling need" in order to modify it.

To meet that standard, El Badrawi offers the fact that the presentation of the Lowenstein appeal would be greatly aided if this court permits the use of the protected materials that plaintiff seeks.  The court is sympathetic to the complications involved in FOIA litigation.  "[T]he party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information" because the "party seeking disclosure cannot know the precise contents of the documents sought."  Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973) (finding that "[t]his lack of knowledge by the party seeing [sic] disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution").  Although courts can make their evaluation of protected documents after in camera review, such an examination "is necessarily conducted without the benefit of criticism and illumination by a party with the actual interest in forcing disclosure."  Id. at 825.  It seems that the Lowenstein plaintiffs would likely benefit from the use of Bates Nos. 284-86 in their argument before the Second Circuit.[1]

---

[1] We note here that much of the analysis in Vaughn applied specifically to FOIA litigation involving a large volume of documents.  Vaughn, 484 F.2d at 825 ("In theory, it is possible that a trial court could examine a document in sufficient depth to test the accuracy of a government characterization, particularly where the information is not extensive. But where the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and

While it is apparent that the Lowenstein plaintiffs are likely to benefit if this court modifies the Protective Order, the advancement of the interests of one party alone does not justify modification.  The issue is whether allowing the Lowenstein plaintiffs to use Bates Nos. 284-86 in their arguments before the Second Circuit would yield a more fair and equitable proceeding.  Because this court is not privy to the Lowenstein litigation, it is not possible for this court to make that assessment.  Harder still is the task of evaluating from afar whether the benefits derived for the Lowenstein case on appeal would be significant enough to meet the Martindell standard needed to modify the Protective Order in this case.  Effectively, El Badrawi's counsel asks this court to assess whether the need for using the protected document in *another case* before a *different court* rises to the level of an "extraordinary circumstance or compelling need." Martindell, 594 F.2d at 296.  This court is not in a position to make that assessment.

The circumstances of this case are unusual.  El Badrawi's counsel came into possession of the protected document in this case that, by coincidence, happens to be at the epicenter of different, FOIA litigation in which he is also counsel.  Given that counsel has already seen the document in question, and given that the Lowenstein appellants' papers would be filed under seal, if allowing counsel for appellants to argue from the document would assist the Court of Appeals, the exceptional circumstances standard might be satisfied.  See Martindell, 594 F.2d at 296.

It appears to this court that this assessment can only be determined by the Second Circuit panel that ultimately is charged with hearing the Lowenstein appeal.

---

characterization as would a party interested in the case.").  Because the protected material at issue here totals only three pages, the analysis of the difficulties of FOIA litigation identified in Vaughn is inapposite.

This court does not know if the Court of Appeals will request that the document be submitted under seal and *ex parte* and, if it does, whether that panel would conclude there is such value in permitting appellants' counsel -- who has seen the document in question -- to make use of that document in his (under seal) argument to the court so as to satisfy the Martindell standard.

The plaintiff's Motion to Modify Protective Order is **DENIED**.  In so ruling, this court does not mean to suggest that the Martindell standard cannot be met.  It is merely stating this court is not in a position to find that it has been met.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of September, 2009.


      /s/ Janet C. Hall
Janet C. Hall
United States District Judge