```
 1                  UNITED STATES DISTRICT COURT

 2                     DISTRICT OF CONNECTICUT

 3     _____
       RASHAD AHMAD REFAAT          )
 4     EL BADRAWI                   )
                       Plaintiff.   ) NO:3:07cv1074(JCH)
 5                                  )
       vs.                         ) October 20, 2009
 6                                  ) 12:00 p.m.
       DEPARTMENT OF HOMELAND       )
 7     SECURITY, ET AL             )
                       Defendants.  )
 8     _____
                                        915 Lafayette Boulevard
 9                                      Bridgeport, Connecticut

10                    TELEPHONE CONFERENCE

11
       B E F O R E:
12                  THE HONORABLE JANET C. HALL, U.S.D.J.

13     A P P E A R A N C E S:

14     For the Plaintiff   :
       (BY TELEPHONE)                   HOPE METCALF
15                                      ANYA BERNSTEIN
                                        DANIEL MULLKOFF
16                                      JENNIFER CHANG
                                        GRANT MARTINEZ
17                                      Yale Law School
                                        127 Wall Street
18                                      New Haven, CT  06511

19     For the Defendants  :           BRANT S. LEVINE
       (BY TELEPHONE)                   EDWARD MARTIN
20                                      U.S. Department of
                                        Justice
21                                      P. O. Box 7146
                                        Washington, DC  20044
22

23                                      MAURA MURPHY-OSBORNE
                                        Attorney General's Office
24                                      55 Elm Street
                                        Hartford , CT 06141
25
```

```
 1

 2     Court Reporter       :        Terri Fidanza, RPR

 3     Proceedings recorded by mechanical stenography,
       transcript produced by computer.
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:  Good afternoon.  This is Judge Hall

2     speaking.  I hope I have counsel on the phone in the case

3     of Rashad El Badrawi versus Department of Homeland

4     Security, et al.  Case number 3:07CV1074.  If I can have

5     appearances please.

6          MS. METCALF:  This is Hope Metcalf participating

7     on behalf of the plaintiff.  Also on the phone and

8     appearing under my supervision, law student interns

9     Daniel Mullkoff, Anya Bernstein, Grant Martinez, and

10    Jennifer Chang.

11         THE COURT:  Good morning to all of you.  For the

12    defense.

13         MR. LEVINE:  Brant Levine with the Department of

14    Justice for defendant United States.  With me is Ed

15    Martin, also counsel for the United States and present

16    with us is Daniel Meyers, counsel for U.S. Immigration

17    and Customs Enforcement.

18         THE COURT:  Good afternoon to all of you.

19         Are the state defendants' counsel on the phone

20    or not because this doesn't particularly apply to them?

21    No one else is on the line?  That answers my question.

22         I'm prepared to rule on the pending motion to

23    compel that's Docket Number 177.  However, before I do

24    that, I have a number of questions that I need to ask to

25    clarify.  I would appreciate if I direct a question to

1    you, if you can answer it.  I'm not looking for argument,

2    I'm looking to clarify things so my ruling will make

3    sense.

4              My first question to Attorney Levine is whether

5    any of the documents that are in front of me now, have I

6    reviewed before in connection with the ruling in this

7    case or I suppose more likely the FOIA case?

8              MR. LEVINE:  Your Honor, yes.  Every document

9    you have reviewed in the FOIA case with the exception of

10   the priority levels for Operation Frontline.

11             THE COURT:  All right.

12             MR. LEVINE:  Those documents were reviewed by

13   Judge Kravitz.  But every other document you have to

14   reviewed in the FOIA case.

15             THE COURT:  With respect to documents about the

16   priority level description for Operation Frontline, it's

17   my recollection that in a ruling I made from the been

18   that's memorialized in a transcript this summer, I

19   directed the government to produce documents sufficient

20   to show but not all documents, but just documents that

21   would be sufficient however to show all aspects of that

22   program.

23             With respect to the Frontline documents that

24   I'm reviewing, have reviewed in connection with the

25   current Motion to Compel, would it be the reasonable for

1    me to conclude that the redacted information that's the

2    subject of the Motion to Compel concerning priority level

3    description has not been produced in any other form?

4         MR. MARTIN:  Edward Martin for the government,

5    correct.

6         THE COURT:  How would it be that you have

7    complied with my order from this summer?  In other words,

8    I ordered that the plaintiff get some, one or more

9    documents which taken together would give them a complete

10   description of the program.  I guess your position is

11   that you can't do that even though I've ordered you to do

12   it because of the assertion of the law enforcement

13   privilege.

14        MR. MARTIN:  Our position would be that we have

15   provided them information concerning the whole, the

16   entire program and that we just redacted this one

17   particular sensitive item that we provided you ex-parte

18   which we asserted law enforcement privilege.

19        THE COURT:  Am I -- is it correct that in

20   whatever documents you have disclosed -- has someone

21   joined the call?

22        MS. MURPHY-OSBORNE:  Yes, Maura Murphy-Osborne.

23        THE COURT:  Good afternoon.  I'm speaking to

24   Attorney Martin I think.  Am I correct in the document or

25   documents you have given to the plaintiff in order to

1   satisfy my order that you provide them the documents

2   which documents which taken together would be sufficient

3   for them to know about this program, all aspects of it,

4   you have not previously presented to them any document

5   which contained the information in whatever form that is

6   now redacted from these Frontline documents in front of

7   me.

8           MR. MARTIN:  That's correct, your Honor.

9           THE COURT:  All right.  With respect to the

10  plaintiff, I'm not sure, Attorney Metcalf, I will

11  probably call on you but if it is a law student that's

12  fine.  Please make sure everybody identifies themselves.

13  In your motion to compel you indicated to U.S. 67 through

14  68 was withheld under the deliberative process privilege

15  but the defendant does not list it as withheld.  At the

16  hearing I think I asked if 56 through 9 and 80 through 81

17  were the documents in question with regard to that

18  privilege and you replied they were, so am I correct that

19  the deliberative process claim does not include U.S. 67

20  through 68?

21          MS. METCALF:  I'm going to defer to Daniel

22  Mullkoff or Anya Bernstein.

23          MS. BERNSTEIN:  Just one second.  I'm looking

24  these up.  This is Anya Bernstein.  I believe U.S. 67 and

25  68 were produced to us after we filed the Motion to

1    Compel.

2              THE COURT:  Is that correct, Attorney Levine?

3              MS. BERNSTEIN:  ICE 118 and 119.

4              MR. LEVINE:  That's correct.

5              THE COURT:  Fine.  Be the motion would be moot

6    as to those two pages, correct.

7              MS. BERNSTEIN:  Correct.

8              THE COURT:  Thank you very much.  Further, in

9    the Motion to Compel, the plaintiff has conceded in your

10   original motion that U.S. 285 through 6 and 288 properly

11   had the law enforcement privilege invoked as to it.

12   However, you seem in your -- that's at note 13 of your

13   memorandum.  However at page 26, you seem to argue for

14   disclosure of the materials so I need to know the

15   plaintiff's position as to these documents 285, 86 and

16   88.

17             MS. BERNSTEIN:  This is Anya Bernstein again.

18   We believe that the threshold invocation of the law

19   enforcement privilege was made correctly insofar as the

20   government presented an affidavit from an official so we

21   believe that in the balancing test that the law

22   enforcement privilege requires, plaintiff counsel that we

23   should still get access to the information.

24             THE COURT:  When I get to that portion of my

25   ruling, if I overlook those three pages, I assume you

1    will remind me gently that I need to rule on them.  I'm

2    not sure they are in my notes for my ruling.

3          Lastly, I would like to ask the government, the

4    federal government there's a document that I have

5    reviewed which is U.S. 158.  On it there is some blue

6    which I take to be the material that was redacted by the

7    government prior to the production and based upon the

8    assertion of privilege.  My question to the government is

9    is the entire rest of the document produced other than

10   the blue highlighted material?

11         MR. LEVINE:  Yes, your Honor.

12         THE COURT:  So.

13         MR. LEVINE:  Let me correct that, your Honor.

14   Plaintiffs have only challenged certain redactions so the

15   blue is the redactions they are challenging.  They

16   haven't challenged necessarily all redactions.

17         THE COURT:  Would you do me a favor and look at

18   the document.  I will try to be cryptic because I don't

19   know what they have but you will notice there are various

20   captions to segments of this document.  Let me know when

21   you get to it.

22         MR. MARTIN:  Edward Martin for the government,

23   your Honor.  I am at 158.

24         THE COURT:  All right.  If you look at the

25   document, you will notice there are all caps headings.

1   There are actually four of them.  Do you agree with me?

2              MR. MARTIN:  I have three, your Honor.

3              THE COURT:  It is on the one page 158 the first

4   begins with a D, the second with a B, the third with a C

5   and the fourth with an I.

6              MR. MARTIN:  Correct.

7              THE COURT:  I'm talking about the headings at

8   the left margin.  If you look at the third heading

9   beginning with a C, look immediately above it.  There's a

10  word then a colon, then another word in caps.  Was that

11  produced to the plaintiff?

12             MR. MARTIN:  If we can have one moment, your

13  Honor.

14             THE COURT:  Yes, sir.

15             MR. LEVINE:  Maybe it would helpful counsel for

16  plaintiff knows what exhibit it was attached to so we can

17  compare it.

18             MS. BERNSTEIN:  You are looking at 158?

19             MR. MULLKOFF:  I'm looking at the redacted

20  version we have which we believe is the most recently

21  produced one there is redacted after lookout colon, the

22  next word is redacted.

23             THE COURT:  Thank you very much.  Lastly, I'm

24  quite confused by which documents are the subject of the

25  assertion of the law enforcement privilege.  I thought it

1    was Exhibit H but those are only I think 15 pages.  In

2    the plaintiff's memo, there are 21 pages identified.  If

3    I added the five pages attached to the Kibble's second

4    affidavit, that doesn't get me to 21 and so I am

5    confused.  I think if we could start I guess by the

6    plaintiff telling me as of now, don't tell me anyone as

7    to which either you have backed off or the defendant

8    produced.  Which document are you contesting the

9    assertion of the law enforcement or national security

10   privilege?

11            MR. MULLKOFF:  This is Daniel Mullkoff.  I can

12   tell you some.  Ms. Bernstein can finish.  We're

13   conducting U.S. 50, 60, 131, 153 and 154.  158, 48, 88,

14   152, 155, 161 and 162, 181, 82 and 83 and Ms. Bernstein

15   has a few others.

16            MS. BERNSTEIN:  The ones I have are the ones

17   your Honor mentioned earlier 285, 286, and 288 as well as

18   the deposition questions from Mr. Carney's deposition.

19            THE COURT:  If I listened correctly, there's

20   no -- 94 and 95 are not the subject of the motion

21   anymore?

22            MS. BERNSTEIN:  Just one second, your Honor.  I

23   think we're both checking.

24            THE COURT:  What you have told me is 15 so that

25   would hopefully correlate to what I looked at Defendant's

1    Exhibit H ex-parte.

2            MR. MULLKOFF:  I do believe that the ones that

3    we mentioned are the only documents.

4            THE COURT:  Okay.  When you said, I heard

5    somebody say.  I thought I heard you say 183, did you

6    mean 83?

7            MR. MULLKOFF:  I did mean 183.

8            THE COURT:  That's fine.

9            MR. MULLKOFF:  Three pages 181 to 183.

10           THE COURT:  Okay.  Do the documents that are

11   attached to the Kibbles second affidavit, my copy doesn't

12   have Bates Number or any production numbers on them.  Are

13   those not the subject of the Motion to Compel?

14           MS. BERNSTEIN:  I believe counsel for the U. S.

15   informed us that a prioritization categories which were

16   produced in redacted form to us in that memo with Bates

17   Stamp 285, 86 and 88 were produced to you in full with

18   the Kibble declaration.  Is that not correct?

19           THE COURT:  Correct.  I have a Kibble affidavit

20   or declaration July 13.  Might have been his first.  But

21   attached to it was a September 24, 2004 memorandum that's

22   four pages in length as to which three pages have

23   redactions and attached to that was a single page that

24   had redactions on it so that would be four pages which

25   doesn't correlate to the three that you have just told me

1    about so.

2          MS. BERNSTEIN:  Mr. Levine can correct me if I'm

3    wrong, I think what's happening we're not challenging

4    because not all of that memorandum was redacted.

5          THE COURT:  Large parts appear not to have been

6    redacted.

7          MS. BERNSTEIN:  Right.  We're challenging the

8    description of the priority categories.

9          THE COURT:  Do you think those pages are

10    numbers?

11          MS. BERNSTEIN:  In our version, they do.

12          THE COURT:  What numbers are they?

13          MS. BERNSTEIN:  285, 86 and another version of

14    the same thing on 288.

15          THE COURT:  Attorney Levine, if you go to

16    Kibble's July 13 affidavit, you attached a four-page

17    memorandum is 285 and 286 the second and third pages?

18          MR. LEVINE:  I believe that's correct.

19          THE COURT:  288 is that single sheet that's

20    annexed after the affidavit, is that correct?

21          MR. LEVINE:  Right.

22          THE COURT:  Thank you.  Give me one moment.  I

23    believe I'm prepared without further questions to make

24    some rulings in this case.  The first category of

25    documents as to which there's an issue in the Motion to

1    Compel Number 177 is one document relating which the

2    plaintiff seeks to have produced which is U. S. 152 and

3    it was originally described -- there seems to be some

4    dispute as to who started the description but there's no

5    question that at one point the defendant described it as

6    involving visa revocation.  It seems that the defendant

7    first characterized it that way in a conference with

8    plaintiff's student counsel Ms. Bernstein.  Later,

9    however, in the privilege log of July 10, the defendant

10   addresses U.S. 152 also known as ICE 130 and claims that

11   the information that had been redacted pertained to the

12   Department of State's consular lockout and support system

13   which is a system for processing visa applications.

14   That's at the sixth index privilege documents July 10,

15   2009 at four, attached to the Motion to Compel at Exhibit

16   7 and the privilege invoked is INA Section 222F which of

17   course is codified at 8 U.S.C. Section 1202F as well as

18   the law enforcement privilege.

19          Later on in the opposition in the Motion to

20   Compel, the defendant does refer to the document as

21   pertaining to Mr. El Badrawi's visa revocation that would

22   be at opposition Document Number 186 at page 3.  That

23   said, I believe Attorney Levine in response to my

24   questioning at the oral argument on this motion,

25   clarified that he had been merely using the plaintiff's

1    characterization which, of course, the plaintiff claims

2    began with Attorney Levine's characterization but

3    eventually Attorney Levine indicated that his position

4    was the document related to the issuance or refusal of El

5    Badrawi's Visa.  Obviously this court has issued a fairly

6    lengthy prior ruling which can be found at 583 F. Supp

7    2d, 285, at pages 311 and 312, in which it addressed the

8    question essentially of statutory construction issue of

9    whether documents relating to visa revocation were

10   included or not within the scope of 1202F and the court

11   concluded that by the plain language of that statute, it

12   applied solely to issuance or refusal of a visa and not

13   to the revocation of a visa.  However, the court in

14   reviewing the document which it did at Exhibit A of the

15   Defendant's Opposition, it is quite apparent to the court

16   that the document does not relate to visa revocation.  It

17   seems clear to the court that it relates to the issuance

18   or refusal of a visa.  I admit the court admits that this

19   seems a bit odd.

20          First because the plaintiff claims at least

21   that the defendant was not seeking a visa around the time

22   that the document is dated which is October 21, 2004, and

23   of course, secondly, because the government had

24   characterized it as relating to a revocation.

25          However, the court can't ignore the very plain

1    words of the document itself, its reading of the document

2    and its understanding of the words in the document compel

3    it to conclude that the document relates to a subject

4    matter that is issuance or refusal of a visa which is

5    clearly covered by the plain language of 1202F and

6    therefore, not discoverable.  Therefore, with respect to

7    U.S. 152, the Motion to Compel is denied.

8         The defendant also asserted and the plaintiff

9    challenges in the Motion to Compel that assertion which

10   of both attorney/client privilege, deliberative process

11   and a belated assertion of work product.  There are six

12   documents that is I understand and I reviewed as

13   Exhibit 2 to the defendant's opposition and those

14   documents are U.S. 56, 57, 58, and 59 and U.S. 80 and 81.

15        Actually I have one more question for the

16   plaintiff.  My Understanding from the oral argument was

17   that the plaintiff stated if the work product privilege

18   was properly invoked with respect to these documents,

19   then the plaintiff would not press obviously because the

20   documents would not be produced because of the work

21   product privilege, the plaintiff would not press their

22   Motion to Compel on the deliberative process or

23   attorney/client privilege basis.  Did I understand

24   plaintiff's position correctly?

25        MS. BERNSTEIN:  That's correct.

1           THE COURT:  The court has reviewed the documents

2      for work product privilege.  I shouldn't be calling it

3      privilege.  It's the Work Product Doctrine and to see

4      whether if the defendant has properly refused to produce

5      the documents based upon that doctrine.

6           I reviewed those documents keeping in the mind

7      the fundamental principles of that doctrine.  Obviously

8      the doctrine goes back, at least it was clearly

9      formulated in the Hickman versus Taylor and provides in

10     that case, that material collected or created or used by

11     counsel in the preparation for litigation including

12     possible litigation is protected from discovery.  Its

13     qualified protection in that the adversary may obtain the

14     discovery on a showing of sufficient need, and that

15     attorneys' thinking, their theories, analyses, mental

16     impression and beliefs are at the heart of our adversary

17     system, and privacy is essential for attorneys to engage

18     in this analytical assessment of their cases.  Thus the

19     protection is the greatest, albeit not absolute, for

20     materials that reveal the attorney's thinking.  In

21     addition, the scope of this privilege is broader, of

22     course, than the attorney/client privilege.  It does not

23     require that the recipients necessarily be deemed to be

24     clients or attorneys.

25           Lastly, of course, the documents in question

1    were generated at the time of and in connection with the

2    proceeding that Mr. El Badrawi was involved in in the

3    fall of 2004.  We're now, of course, involved in a

4    different litigation.  There has been some case

5    discussion over whether the privilege always continues

6    from one litigation which I would deem the immigration

7    proceeding to be to another, that is this litigation.  In

8    this instance, I have no difficult with concluding that

9    the work product doctrine which would have protected

10   these documents from their discovery back in 2004

11   continues into this litigation.  This litigation is, of

12   course, an offspring of that prior administrative

13   litigation.  It involves essentially the same parties or

14   the same parties in interest.  It involves many of the

15   same facts and issues.

16          So let me now turn to the documents in

17   question.  Before I do that, I would ask the government's

18   counsel who is Bruckshin.  His name appears on U.S. 80.

19          MR. LEVINE:  Donald Bruckshin is an ICE

20   headquarters employee.  He worked for the National

21   Security Division.  He was the desk officer at the

22   National Security Division who worked on the El Badrawi

23   case.

24          THE COURT:  Thank you.  As I say, these

25   documents appeared at Exhibit D in an unredacted version

```
 1      for the Court's review.  I have reviewed and re-reviewed
 2      the six pages many times.  It's very clear to me upon
 3      review that they are clearly protected by the work
 4      product doctrine.  They relate to the ongoing immigration
 5      proceeding, litigation.  They involve in many instances
 6      attorneys as the authors or recipients.  Occasionally
 7      they are forwarded onto people who are not attorneys but
 8      those people are to my understanding people involved in
 9      the administrative process and acting on behalf of the
10      United States in that proceeding or in connection with
11      that proceeding.  They clearly discuss what is protected
12      under the work product doctrine.  That is the attorney's
13      thinking about the proceeding.  Their judgments, their
14      communicating to exchange ideas, to ask questions about
15      someone else's view on matters relating to the
16      administrative proceeding.  The discussion of the -- I
17      don't want to say too much because I don't want to reveal
18      what's in them but it is not a close question in my
19      opinion that the contents of these are protected by work
20      product and while the plaintiff might very well like to
21      see what's in these, I know of no showing of hardship
22      that they have made that would overcome the very high
23      protection accorded to that material which they would
24      most like to see which is, of course, the mental
25      impressions and thinking of the attorneys which as I said
```

1   earlier, it is still a qualified protection but

2   nonetheless, it is a high protection when it is

3   attorney's thinking and that's essentially what most of

4   this is, 90 percent at least if not 95.  It is always

5   true that the opponent would love to see the opposition's

6   attorney's thoughts on their case, their weaknesses,

7   strength, what they might do, what their options are,

8   where they would pursue the litigation, what they might

9   do about it but in my view, there's no hardship that

10  would justify the turning over of that.  In general, I

11  would be hard pressed to think of one.  In this case I

12  know of none.  Therefore, with the respect to assertion

13  of the work product privilege as to these six documents,

14  the court denies the Motion to Compel.

15         The third category of documents I believe is

16  moot because it related to the classified information,

17  U.S. 76 and I believe that was resolved at the oral

18  argument.  It was reported that was no longer an issue.

19         The last category that I need to deal with the

20  law enforcement privilege and that is the documents

21  contained at Exhibit H of the government's memorandum and

22  attached to the declaration, that is Exhibit 9.  I have

23  already addressed the law enforcement privilege in this

24  case.  Again I think I would call it some length that's

25  the opinion that can be found at 258 F.R.D. 198, 203.  I

1    don't think it's necessary for the counsel on the phone

2    or for me to go on at great length about what that

3    privilege is other than to briefly note so for the

4    record, anyone would understand that I was conscious of

5    the correct standard which hopefully I'm about to

6    articulate.  This privilege is a qualified executive

7    privilege.  It is designed to "prevent disclosure of law

8    enforcement techniques and procedures, to preserve the

9    confidentiality of sources, to protect witness and law

10   enforcement personnel, to safeguard the privacy of

11   individuals involved in an investigation and otherwise to

12   prevent interference with an investigation.  In Re:

13   Department of Investigation, 856, F.2, 481, 484, (2d

14   Circuit 1988).

15          The government has to satisfy three steps

16   before the privilege is properly invoked.  One, there has

17   to be a formal claim of privilege lodged by the head of

18   the department who has control over the requested

19   information.  Two, assertion of the privilege must be

20   based on actual personal consideration of the matter by

21   that official and three, the claim must specifically with

22   particularity specify the information for which the

23   privilege is invoked and must explain why it falls within

24   the scope of the privilege.

25          Once that threshold has been met of those three

1    elements, it's then my responsibility to balance the

2    interest, "favoring and disfavoring disclosure, keeping

3    in mind the burden of persuasion rests on the party --

4    that is the government here -- seeking to prevent

5    disclosure."  MacNamara versus City of New York, 249

6    F.R.D. 7, 70, 79, (SDNY 2008).

7              In connection with engaging in that balancing,

8    the court must be conscious of the fact that in terms of

9    the interest on both sides, whether those interests can

10   be served through the use of appropriate protected order.

11   I'm sorry.  I will have to take a very short break.  I

12   will be back in less than a minute.  If you can hold on

13   for just a moment.

14             I'm sorry.  I couldn't locate something.  My

15   understanding is that the government has turned over --

16   no.  That isn't my understanding anymore.  You have not

17   turned over all of Exhibit H except the blue highlight.

18   Those are the only ones that are in issue.  Is that

19   right, Attorney Levine?

20             MR. LEVINE:  That's correct, your Honor.

21             THE COURT:  The court had some difficulty in

22   discerning whether the defendant had met its threshold

23   requirements.  I suppose that began with the fact that

24   the defendant in their opposition at 13 invokes the law

25   enforcement privilege but points to the Exhibit C which

1    is as a Kibble affidavit although that's actually the

2    affidavit of Mr. Beardsley and speaks to law enforcement.

3    Not law enforcement, excuse me, but instead to the 1202F

4    issue.  The second source of confusion is that Mr. Kibble

5    gave not one but two declarations, both of which were

6    attached to the government's opposition.  July 3 I have

7    mentioned and a second one on September 1.  As I

8    understand it, the first Kibble declaration, the July 13

9    deals only with what is I now understand to be the issues

10   raised to that 285, 286 and 288 that has to do with the

11   description of the priority levels.  But as to which I

12   didn't have the numbers until just a few moments ago so

13   that was a little bit of my confusion.

14          The second Kibble declaration covers all of the

15   other documents that are at Exhibit H as to which I

16   understand the law enforcement privilege is asserted.

17          The plaintiff has raised an argument that the

18   defendant has not met the threshold three requirements

19   because Mr. Kibble was not the head of the department.

20   However, his second declaration was given while serving

21   as acting director of the office of investigation of ICE

22   and reflects that he reviewed the documents, gave them

23   personal consideration and invokes the privilege in a way

24   that the case law requires him to.  And so it's the

25   court's conclusion that his affidavit, the second one,

1    clearly satisfies the threshold requirements of the law

2    enforcement privilege.

3             With respect to the fact that when he gave the

4    first declaration that relates to the priority level

5    description, it is three pages in the memorandum that I

6    have mentioned earlier, he was not the acting director.

7    He was the deputy director.  The court is going to find

8    that that's still satisfies the requirements.  There is a

9    technical argument I suppose to be made that it does not

10   but given his current status as acting director and the

11   content of that affidavit that does satisfy the second

12   and third requirement easily, it is the court's

13   conclusion that the government has met the threshold as

14   to all of the documents at issue on this privilege.

15            However, as I said earlier, this is not -- the

16   privilege is not an absolute privilege and even if the

17   government does satisfy the threshold requirements, the

18   court still needs to assess and balance the interest on

19   both sides in determining whether to compel the

20   production of the redacted material.  And in that regard,

21   as I said earlier, the burden, of course, is on the

22   government.  A number of factors are appropriate it seems

23   to this court to consider in deciding where the balance

24   is struck.  Factors that favor disclosure include among

25   others the relevance of the requested materials and their

1    importance to the plaintiff's case, the strength of the

2    plaintiff's case, its importance to the public interest.

3    As I said earlier in an opinion, the importance of the

4    prosecution of civil rights actions and vindication of a

5    person's civil rights.  Factors that disfavor disclosure

6    include among others the threat of the safety of law

7    enforcement personnel, the invasion of privacy, the

8    weakening of law enforcement programs by disclosure of

9    information about them.  The chilling effect on internal

10   investigative candor and citizen complaint candor and

11   state privacy law.  The court has, of course, undertaken

12   this balancing test previously in a prior ruling El

13   Badrawi versus DHS in this case.  The 258 F.R.D. 198 at

14   206, (DCONN 2009).

15           It strikes me here that as I look at these

16   documents, really the balance, while there are other

17   issues on both sides, the balance really comes down to

18   the importance of the document or the information that's

19   redacted to the plaintiff in connection with the

20   prosecution of his claims against the government in

21   contrast or balance with the government's needs to

22   protect its investigative programs from the discovery by

23   persons who might make improper use of that information,

24   i.e., use it to frustrate those programs.

25           The court will turn to either each document or

1    group of documents and specifically address where the

2    balance comes out with respect to each of them.  Let's

3    see.

4           With respect to Document Number 50 and 131,

5    actually my decision is based in some measure upon the

6    answer to the question I think that Attorney Martin gave

7    me with respect to another document.  I can't remember

8    what number it was.  158, as to what portion of that had

9    not been turned over and I believe not challenged because

10   it is not in front of me as challenged and in this

11   memorandum, the page 50 of it, actually 60 of it and 131,

12   each of those documents has had redacted two words

13   without counting an A or a the or something like that.

14   There's two nouns or an adjective and a noun.  One of

15   those has been produced in that Document 158 and one

16   hasn't.

17          While I think that the second word that appears

18   redacted in number 50 which is the last word appearing in

19   the fourth line of section 1, first paragraph of that

20   document, I see no basis to not produce that to the

21   plaintiff.  You have already produced it, in effect, in

22   another document and I think that word without the word

23   in front of it, is really I see very little law

24   enforcement interest.  To be honest, I'm not certain

25   there's much value to the plaintiff but given the law

1    level of law enforcement interest and the fact I'm not

2    the plaintiff's advocate, the court will order the

3    production of that word but not the word in front of it.

4         In other words, Attorney Levine, so we're clear

5    I'm looking at Document Number 50.  You have highlighted

6    in blue a six-letter word and a seven-letter word

7    following it.  I'm ordering that the document be produced

8    with the seven letter word being with L produced to the

9    plaintiff but you may continue to redact the six-letter

10   word that continues to appear in front of it.  Is that

11   clear?

12        MR. LEVINE:  Yes.

13        THE COURT:  The same applies to the two words in

14   the Document 60 and Document 131.  So with respect to the

15   Motion to Compel, it is granted in part and denied in

16   part.  The reason I'm not allowing the disclosure or the

17   production of the document with the word that I have

18   identified unredacted is because as I read through the

19   documents, it's my understanding that that relates to a

20   law enforcement program.  That is little really benefit

21   to me to this particular plaintiff to know that those

22   letters or words, the word and that the government has an

23   interest in protecting from disclosure that word.  So it

24   has protected it in prior documents that have not been

25   challenged.  For those reasons, that's the denial in part

1    relates to that word.

2          Let me turn now to another document.  The next

3    document would be 48 I would turn to.  I guess I'm sorry

4    but I have a question for the government.  With respect

5    to the redaction that appears towards the bottom of the

6    document on the right side following three words that I'm

7    assuming the plaintiff has seen.

8          MR. MULLKOFF:  This is Daniel Mullkoff.  We have

9    the categories at the bottom primary, action and lookout

10   level but not the responses to those categories.

11         THE COURT:  Correct.  My question to Attorney

12   Levine is am I correct in no production have you

13   disclosed what follows lookout level?

14         MR. MARTIN:  Edward Martin for the government,

15   your Honor.  That's correct that it has not been produced

16   that which follows lookout level.

17         THE COURT:  Give me just a moment please.  Let

18   me deal with the easiest part of this.  With respect to

19   Document 88, Document 155, 161, 162, 181, 182, and 183,

20   what has been redacted but shown to me ex-parte with

21   respect to those documents are -- well, other than 88 the

22   remaining documents 155, 161, 162, 181, 182, 183,

23   essentially contain, if not the identical words, much of

24   the same words are repeated throughout those documents.

25   It's the Court's conclusion that the Motion to Compel as

1    to those documents is denied.  As I review those

2    documents, I find that the government's interest in

3    protecting from disclosure its procedures, in particular,

4    its law enforcement procedures outweighs any interest

5    which again I'm not the plaintiff's advocate and probably

6    only one percent of its understanding of the evidence in

7    the case but I'm at a loss to see why this information

8    would be of particular interest to the plaintiff.

9            With respect to U.S. 88, that is clearly

10   related to ICE procedures in enforcing the law and

11   disclosure of those procedures I find would be harmful to

12   the government and at this time I see no basis for the

13   turn over of that information.  I treat 88 different than

14   the other six pages that I have just discussed only

15   because it does not sort of contain the repetitive

16   reference to certain phrases that the other six documents

17   does.  It has additional and lengthier material but it

18   falls into the same category.  However and I'm going to

19   get of course to the deposition issue in a moment but if

20   in the deposition, the agents, the plaintiff were to

21   discover through their testimony that the agents accessed

22   these documents or were provided information from these

23   documents and from these documents, I'm of course meaning

24   the portion that the plaintiff has not received, then I

25   would consider a further Motion to Compel and to turn

1   them over.  I don't want to rule now because I don't know

2   that that will happen but I have to say at this point, my

3   thinking is that I would very likely turn them over

4   because if that were the case, it would strike me that

5   then the use of them, the need for them by the plaintiff

6   becomes greatly heightened because of the nature of their

7   claim and if it is so established the fact that the

8   agents, the people involved in making the decision to

9   pick up Mr. El Badrawi or how to treat him, access this

10  information so if that's the case, then as I say I will

11  have to address this again.  At this point, the court

12  denies the Motion to Compel number 88, 155, 161, 162,

13  181, 182, and 183.

14          The next documents are 153 and 154 and if I am

15  reading these documents correctly, they are dated after

16  Mr. El Badrawi left the country and they at least with

17  respect to 154 disclose on their face that the

18  information was generated after Mr. El Badrawi left the

19  country.  In the text of the first document 153 suggests

20  the same is true as to that.  If I'm reading it

21  correctly.  I'm resting my analysis on that, then my

22  conclusion is that the government's interest in

23  protecting this information in connection with the

24  assertion of law enforcement privilege as to its

25  investigations and its investigative techniques that the

1    blue portion in Exhibit H at 153, 154, that they have a

2    legitimate law enforcement interest in protecting this

3    information.  Again it's law enforcement techniques and

4    information about investigative procedures and programs,

5    if disclosed could harm their programs and their

6    effectiveness and that the interest to the plaintiff it

7    seems to me, given the date this material was generated,

8    is really not terribly probative to the plaintiffs as to

9    their claims or within the scope necessarily even of

10   discovery.

11          The remaining document in this group -- there's

12   another document 158 which has similar language to the

13   language that's in 153 and 154.  I can't tell, though,

14   what the date of the document is.  Can either counsel

15   help me in that regard?  It happens to be page three of

16   some other document, the first two pages which I don't

17   have.

18          MR. LEVINE:  This is Brant Levine.  I believe

19   this document was generated on or about October 1, 2004.

20   This is part of the report of the investigation from ICE

21   headquarters to the Hartford Office, letting the Hartford

22   office know to the investigate Mr. El Badrawi.

23          THE COURT:  All right.  Do we know if this was

24   reviewed or relied upon by the agents involved in the

25   arresting him or prosecuting him?

1        MR. LEVINE:  It appears that is the case, your

2    Honor, yes.

3        THE COURT:  Again I have to be cryptic but

4    Attorney Levine, the highlighted blue material on my copy

5    of 158 in Exhibit H in the second line has certain

6    material that has capitals in it.  Cap initial or

7    otherwise.  Are those particular words not produced in

8    any other document previously to the plaintiff?

9        MR. LEVINE:  Those four letters that alone has

10   been produced in other documents.  So.

11       THE COURT:  How about the next three words?

12       MR. LEVINE:  The next three words?  No, those

13   have not.  That's very similar to what you ruled on with

14   U.S. 50, U.S. 60.

15       THE COURT:  I wasn't going to say that.  I'm

16   aware of that, though.  The court's ruling on this will

17   be the same with the ruling with the respect to the U.S.

18   88 and the six other documents that I indicated I will

19   deny the Motion to Compel at this time based upon the

20   Kibble affidavit and the interest of the government in

21   protecting its law enforcement techniques and programs

22   but again would consider a Motion to Compel to be renewed

23   after the deposition of the government agents as to what

24   they relied upon or were told what information they were

25   told from document, either they read the document or

1    someone else read it and told them about it.  If this

2    were such a, document I would consider a further Motion

3    to Compel.

4        MR. MULLKOFF:  This is Daniel Mullkoff.  So the

5    deposition of Agent Loser already happened last Thursday

6    or Friday.  And we were able to present him with some of

7    the documents but not all of these.  So I would ask for

8    the court's leave to for some sort of questioning of

9    Agent Loser regarding all of these documents that you are

10   flagging.

11       THE COURT:  I will deal with that at the end.

12   Thank you.  The last one in the category in my notes

13   doesn't help you much but it is number 152.  I believe

14   that's the identical document that was the subject of the

15   1202 F assertion at tab 8.  Certainly looks like it to

16   me.  Attorney Levine, you are probably in the best

17   position since you have the complete document or Attorney

18   Martin, am I mistaken about that?

19       MR. LEVINE:  It is the identical document.

20       THE COURT:  I ruled on under 1202 F that I think

21   is an unlimited protection from production so I don't see

22   any point in ruling on it in connection with the law

23   enforcement assertion.

24       That leaves me I believe with the 285 and 286

25   and 288 and 48.  With respect to 285, 286, and 288, they

1    really deal with the same information that in each of

2    those pages.  Not the exact same words but the subject

3    matter is the same thing.  Attorney Levine, am I correct

4    in assuming that for example on 285 there's an italicized

5    word that precedes the paragraph in which there's been a

6    redaction of several sentences.  Is that italics produced

7    earlier in another document or is that something the

8    plaintiff didn't see.

9          MR. LEVINE:  We disclosed the italics which is

10   priority.  We have not disclosed everything that comes

11   under priority one.

12         THE COURT:  The court is going to grant the

13   Motion to Compel with respect to the 285, 286 and 288.

14   The court does so and orders that it be attorney eyes

15   only.  That's Attorney Wishnie.  I suppose Attorney

16   Metcalf is also a member of the bar.  Anyone who is a

17   member of the bar with an appearance of record in this

18   case with I assume proper safeguards taken as to any of

19   this material much of which has been produced under

20   attorneys' eyes only.  This obviously the court expects

21   to be safely guarded by the plaintiff.

22         However, the court while I understand the

23   government's need to protect this information in order to

24   protect its law enforcement programs and in order to

25   allow them to continue to be effective and not be subject

1    to either frustration or harm by persons who might learn

2    of this information who would mean to do harm to the

3    programs and their purposes, at the same this plaintiff

4    has brought a claim which has survived the Motion to

5    Dismiss against the government claiming he was injured by

6    the action taken against him in connection with his

7    arrest and immigration proceeding and delay in removal

8    from the United States.  I cannot comprehend how he can

9    prosecute those claims without having access to this

10   information.  And so as I say, the court grants the

11   Motion to Compel as to 285, 286 and 288 in that it

12   provides a descriptions of the various priority levels.

13   I do that under attorneys' eyes only.  Obviously I

14   believe I've said this before, if court believes for the

15   plaintiff that there's no need for it to be limited for

16   attorney eyes' only, they may make a motion.  It is my

17   view right now that this information is not likely to be

18   anything other than attorneys' eyes only and I have only

19   begun to kind of worry about what I'm going to do when we

20   try this case but I guess we'll put that issue off for

21   another day.

22          That leaves me with I believe only one

23   document.  Is everybody in agreement number 48, that and

24   the deposition, of course?  I don't hear any other

25   numbers being called out so with respect to 48, the court

1    is going the grant the Motion to Compel in part and deny

2    it in part.  The court denies it with respect to the

3    material that appears I will say on left half of the

4    document at the bottom.  There are a series of words and

5    at the end of a very long paragraph.  Then there's a

6    phrase that appears after I believe Mr. Mullkoff

7    indicated those first two words primary action have been

8    disclosed so in other words, the phrase after primary

9    action and words that are highlighted in the blue on my

10   copy just above it, the court denies the motion as to

11   those.  Those are very similar and my reason is the same

12   as my reasoning with respect to 88, 165, 161.  This part

13   of the redaction by the government I believe is the

14   balance of interest lies with them.  It has to do with

15   their program and enforcement, steps and activities which

16   they clearly have an interest in protecting.  On the

17   other hand, the court sees little or no interest to the

18   plaintiff to obtain this information.  Again I may be

19   mistaken about that.  Under my current knowledge of the

20   case, I don't know why that would be of importance to the

21   plaintiff in proving his case.

22           With respect to the redaction that appears on

23   the lower right side of the page that is the look out

24   level, the court is going to grant the Motion to Compel

25   but permit attorneys' eyes only as to that.  I understand

1    that the government has asserted strongly that this is

2    important information to them and that their

3    investigation and procedures with respect to Mr. El

4    Badrawi and in general, could be hurt by the disclosure

5    of this.  On the other hand, I have a plaintiff who is

6    trying to establish a cause of action that relates to

7    what happened to him in the time frame this document was

8    created.  Therefore, this look out level information was

9    a descriptive of his status at that time.  It strikes the

10   court that this information is extremely important to the

11   plaintiff in prosecuting those claims.  The court has

12   limited it to attorneys' eyes only because of the

13   important interest the government has identified but I

14   believe that as the case law tells me to consider, that

15   the limitation to attorneys' eyes only and the incumbent

16   protection of the information by counsel is the

17   appropriate balance of the interest in this case.  In

18   this case, meaning this document U.S. 48.  I should note

19   that nothing has been brought to my attention and this

20   case has been going on for a while as to any suggestion

21   that the plaintiff's counsel has been other than entirely

22   scrupulous in maintaining the protection that the

23   attorneys' eyes only requires, that designation requires

24   and so the court remains confident that the disclosure to

25   counsel of this information solely in connection with

1  this litigation will properly and sufficiently protect

2  the interest of the government that they have asserted.

3  That I believe completes my ruling on the documentary

4  part of the Motion to Compel.  If you give me just a

5  moment.  I need to turn to the exhibit to find the

6  deposition excerpts.  Is that Exhibit 6 to the

7  plaintiff's memo?  If someone on the plaintiff's side

8  could confirm that.

9        MS. BERNSTEIN:  Yes.

10        THE COURT:  The deposition of Mr. Carney on July

11  23, 2009.

12        MS. BERNSTEIN:  Yes.

13        THE COURT:  The Motion to Compel begins with

14  material in questioning that begins at 154 I believe,

15  line 13 through 14 is the first question Attorney Martin

16  objected to.  The question, of course, is whether there

17  were other reasons besides the visa revocation that made

18  the plaintiff a category one.  The court is going to

19  compel the witness to answer that question.  I will put

20  on the record at this point my reasoning but it is going

21  to apply to all of the rulings I make in connection with

22  granting of this motion to the deposition.  That is that

23  it really falls into the same category as my last ruling

24  on U.S. 48.  That is I believe the answers to these

25  questions are essential to the plaintiff in proving his

1    claim.  He has a burden to carry and he needs to discover

2    information as to what was known to or not known to the

3    agents at various points in the proceeding as it affected

4    Mr. El Badrawi.  So in terms of balancing here, it seems

5    to me essential to the plaintiff's claim and I should

6    make it clear that this will be attorneys' eyes only.  I

7    believe much of this deposition, if not all was

8    attorneys' eyes only.  It would be my expectation that

9    this question would be answered under the attorneys' eyes

10   only protection.  If that's the case, then while I

11   understand the interest that the government asserts in

12   protecting the process, the law enforcement process as it

13   applied to Mr. El Badrawi because that may disclose

14   information generally about their law enforcement program

15   and procedures and thinking, I am hard pressed to

16   understand how revealing that as to Mr. El Badrawi and

17   only to his attorney under the protection of attorneys'

18   eyes only outweighs the balance in terms of the need to

19   Mr. El Badrawi and I further really am hard pressed to

20   see how it will harm law enforcement generally.

21           With respect to 155, line 7 through 9, the

22   court makes the same ruling and compels Mr. Carney to

23   answer.  There's a question at 156, line 10 through 15

24   and another one at lines 19 through 22.  The court grants

25   the Motion to Compel as to that.  The next one I find is

1    157, lines 2 through 5, the court grants the Motion to

2    Compel.  The next is at 159, line 23 through 160, line 2,

3    the court grants the Motion to Compel.  And then at page

4    160, line 11 through 15, the court grants the Motion to

5    Compel.  The next is at line 19 through 21 of page 160,

6    the court grants it and the last is line 25 of 160 to

7    line 2 of page 161.  The court grants it.  With respect

8    to all of those questions the court grants it on the

9    condition that the questioning will take place under the

10   attorneys' eyes only protection.

11         There's two things that I need to address.  One

12   that I failed to or overlooked and that is that in

13   respect to my ruling on the work product it bears noting

14   that the defendant only belatedly asserted that

15   privilege.

16         With respect to the other privileges asserted

17   with respect to those documents, the deliberative process

18   and the attorney/client privilege, while the court did

19   not undertake a thorough and complete examination of

20   those privileges, the two deliberative process and

21   attorney client privilege, I have to say that I'm not

22   certain I would have protected these documents because

23   I'm not certain the government has made the showing.

24   However it has made the showing by the very words in the

25   documents themselves of the work product protection as to

1      those documents.  That's why I ordered as I did the

2      protection of them.

3              And then the last issue we need to deal with I

4      guess was raised by Mr. Mullkoff is the fact that the

5      depositions of agents have been taken already and

6      completed.

7              MR. MULLKOFF:  The deposition of one of the

8      agents.  Others are coming up.

9              THE COURT:  All right so Attorney Levine, I

10     obviously hear plaintiff's counsel suggesting that they

11     need to have further time deposing the agents in order to

12     address the questions I have just recognized as

13     appropriate questions and further I suppose to address

14     use of any of the documents that I have just ordered

15     unredacted in part or in whole in granting in part the

16     Motion to Compel.  Do you have a position or reaction to

17     that?

18             MR. LEVINE:  I think my initial reaction is they

19     were able to depose the agent last week for over six

20     hours and they had all of these documents.  They showed

21     some of them to him.  If there were others that were

22     subject to the Motion to Compel, I think you made clear

23     before that the test for relevance is whether they saw

24     these documents and relied on them in any way.  I don't

25     think there's a need to reopen that deposition.  If they

1    wanted to ask these questions, they could have asked

2    those last week.  That's our position is that there's no

3    need to reopen this deposition as far as the question is

4    whether they have seen these documents.  They have a very

5    complete transcript.  I would request if they want to

6    file a motion based on his testimony, then that would be

7    fine.  At this point I don't think there's a need to

8    reopen his deposition.

9         THE COURT:  Are you telling me that the agent

10   whose deposition was taken has been shown, for example,

11   88 in its redacted form and asked if he accessed or

12   looked at that document in connection with his duties

13   with respect to Mr. El Badrawi?

14        MR. LEVINE:  I'm not sure offhand that 88 was

15   introduced but they did introduce a lot of exhibits.  If

16   they didn't introduce 88, they certainly could have and I

17   know for some they asked whether he saw the unredacted

18   portion of documents.  They did have an opportunity to

19   show him this document and any others here.

20        THE COURT:  Mr. Mullkoff, I don't know if you

21   wish to take it or someone else on your side.

22        MR. MULLKOFF:  I can answer that, your Honor.  I

23   believe we showed Mr. Loser 88 and some others.  As to

24   the TECS documents that you first suggested we should ask

25   the agents about, Mr. Loser indicated that he may likely

```
 1    have seen them but that there were numerous TECS
 2    documents he had access.  We did not show him all of the
 3    documents that you discussed such as 158, for example.  I
 4    don't have the documents that we showed him with me right
 5    now.  It's possible that we could have less than only
 6    opening up the deposition, if that's the sole reason that
 7    would need to happen.  That we could do it by video
 8    conference or have representation from defendant counsel
 9    as to perhaps showing him the unredacted version and
10    ascertaining that information.
11             THE COURT:  Was there a reason -- let me take
12    another one besides 158.  Was there a reason why, for
13    example, you didn't show him 181 or 182?  My difficulty
14    is I don't have a copy of the document.  Maybe I do.
15    Maybe I have it in your exhibits.  You gave me what you
16    got.  Can you tell me which of your exhibits you put
17    these documents in.  Is it Exhibit 4 has some of them,
18    right?
19             MR. MULLKOFF:  I believe that's right.
20             THE COURT:  I didn't ever really use yours
21    because I was trying to review them.  Is there a reason
22    why you didn't show him the documents that are at your
23    Exhibit 4 and ask him if he had seen them?
24             MR. MULLKOFF:  We did show him 181, 182, 183,
25    for example, your Honor.
```

1          THE COURT:  Is that in Exhibit four?  Yes.  Had

2     they seen them?

3          MR. MULLKOFF:  It was unclear.  He did not

4     appear to recognize them.  We got the rough transcript

5     very recently.  What I recall from the documents in

6     general was his memory was fuzzy as to whether he had

7     seen particular documents because he accessed a number of

8     TECS documents for plaintiff.

9          THE COURT:  Were you able to ask government's

10    counsel to show him an unredacted version and ask him if

11    he had seen the document, obviously in its form he would

12    have seen it in unredacted or if he had been told that

13    someone told him the information in the document?

14         MR. MULLKOFF:  We did not have the opportunity.

15    We asked if the government would show him an unredacted

16    version.

17         THE COURT:  I didn't understand what you said

18    because you started and stopped.  Did you say you asked

19    for the government to do that or you didn't ask for them

20    to do that?

21         MR. MULLKOFF:  I'm not positive.  Attorney

22    Wishnie may have asked Attorney Levine to do that.  I do

23    know at one point plaintiff's counsel asked Agent Loser

24    whether anything would refresh his memory as to whether

25    he had seen the document.  He said that seeing the

1    unredacted version would refresh miss memory.

2          THE COURT:  Attorney Levine, do you want to

3    respond?

4          MR. LEVINE:  We were not asked by plaintiff's

5    counsel to show him the unredacted copies of the

6    documents.

7          THE COURT:  Did the witness indicate that seeing

8    them in unredacted form might refresh his recollection?

9          MR. LEVINE:  I don't believe he said that, your

10   Honor.  His testimony was that he printed out a lot of

11   documents or a lot of documents in the file and now five

12   years later, he's not remembering which specific

13   documents he looked at or which he didn't.

14         THE COURT:  Where was his deposition taken?

15         MR. LEVINE:  That was in Hartford, your Honor.

16         THE COURT:  Are there other depositions

17   scheduled to be taken and if so, where?

18         MR. MULLKOFF:  There are depositions in

19   Washington and in Hartford, your Honor.

20         THE COURT:  So Attorney Levine, you need to

21   travel to our fair state again either you or you are

22   going to give Attorney Martin that privilege.

23         MR. LEVINE:  Yes, your Honor.

24         THE COURT:  The court's going to permit the

25   plaintiff to in effect re-depose or continue the

1    deposition of the agent who had his deposition taken last

2    week whose name I didn't catch when somebody said it.

3    It's sole purpose will be to permit plaintiff's counsel

4    in an attorneys' eyes only session to ask the witness to

5    look at unredacted copies of the document and to ask if

6    it refreshes his recollection as to whether he saw the

7    document or used the document in connection with his

8    activities and decision making with respect to Mr. El

9    Badrawi, and if it refreshes his recollection, then what

10   is his recollection did he use it or not use it.  And at

11   that point, then the deposition could continue if well,

12   probably isn't efficient but we may end up with a third

13   deposition of him.  You could it seems to me ask him

14   questions, the plaintiff that is, about the unredacted

15   portion now that he's had his memory refreshed that he

16   saw the document or was told by someone else what the

17   document said.  On the other hand, at that point you are

18   in a position to make the renewed motion to compel that I

19   just mentioned which is that since it was part of his

20   thinking.  That question should be asked, in other words,

21   the question that's framed more towards the proof needed

22   in the cause of action as to what's in the mind of this

23   agent.  The plaintiff might want to establish that in

24   preparation for coming with the Motion to Compel.  So it

25   may be more efficient to await the ruling on the Motion

1    to Compel.  On the other hand, if I deny the motion to

2    compel, I think it probably -- I will talk myself into

3    saying the plaintiff should proceed to ask questions

4    about what use or was made of this information by the

5    witness without the witness disclosing the unredacted

6    portions and to inquire of the witness about the

7    unredacted portions now that his memory was refreshed

8    that he had used the document or had been given the

9    information from the document, then I guess if I grant

10   the Motion to Compel, we'll have to go back as to the

11   redacted material but if I don't, then that deposition

12   would be complete.  I hope that's clear.  I'm sorry but

13   we have been going a long time.  I'm a little tired and I

14   maybe talked myself in circles there.  Basically I'm

15   permitting a continued deposition.  I don't expect it to

16   be terribly long.  There aren't that many documents we're

17   dealing with the but the government's counsel will make

18   available to the witness the redacted version of the

19   documents.  Counsel should confer ahead of time and make

20   sure you I agree what the numbers are, what you are going

21   to show the witness, counsel for the plaintiff under

22   attorneys' eyes only will be permitted to ask the witness

23   as to whether seeing the complete document refreshes his

24   recollection as to whether he read the document in

25   connection with his activities with respect to Mr. El

1    Badrawi in the fall of 2004 or whether he was told the

2    content of the information that's in the document by

3    someone else.  If the answer is yes, then the question is

4    then well, first does it refresh, then did he use it.

5    Then questions may be asked about the unredacted portion

6    now that the recollection has been refreshed that he did

7    use it.  Questions as to redacted will have to await a

8    further Motion to Compel that I expect will be filed very

9    shortly after the deposition was completed.  Any

10   questions about that?

11         MR. MULLKOFF:  Is it correct then, your Honor,

12   that the same procedure will be followed for the

13   deposition on Thursday of Agent Manack who we have not

14   disposed yet?

15         THE COURT:  Yes.  You can ask the same questions

16   of him and the same procedure should be followed.  I

17   don't know if those are the only two or whether there's

18   supervisors or somebody else that this procedure may be

19   necessary for.  It may be that somebody looks at a

20   redacted document like this agent on Thursday and he

21   didn't need to see the unredacted to know he used it or

22   didn't use it I suppose but I guess my view would be

23   that -- I take that back.  I think that the unredacted

24   documents should be shown to both of these agents in

25   order to be certain that their answer as to whether they

1    used the document or not rests upon a complete review and

2    not just a partial one.

3            Is there anything else on the Motion to Compel

4    number 177?  If there's nothing further, there are three

5    issues in front of the court that remain.  One is the

6    motion to modify the order that I ruled on with respect

7    to the court of appeals and the Martindell issue.

8    Martindell standard as to use of the document by Attorney

9    Wishnie that he has had access to in the El Badrawi

10   litigation in connection with the appeal in the

11   Lowenstein FOIA litigation currently before the Second

12   Circuit.  The court intends to issue a brief written

13   order and it will be docketed this afternoon so that's

14   just in the category of just in case you were wondering.

15           The next matter pertains to an issue that was

16   raised in the plaintiff's response memo in connection

17   with the Motion to Compel number 177 at footnote 2 as to

18   asking the court to require the government to follow a

19   certain procedure upon the invocation of privilege as a

20   reason for not producing a document.  We had argument on

21   this.  It was brief but it was discussed at the oral

22   argument on the motion that was held a week or two ago.

23   I think I invited further briefing and I received a

24   supplemental memorandum from the plaintiff in support of

25   their request.  As I say, the plaintiff seeks that the

1    defendant follow a procedure which appears to have been

2    first set out by Judge Weinstein in the King versus Conde

3    case out of the Eastern District of New York, 121 F.R.D

4    180 in 1988 and has been cited and modified and adopted

5    in a number of other cases, many of which I have looked

6    at.  It has been used in the context of many different

7    privileges but certainly has been used in connection with

8    the law enforcement privilege.  For example, in the case

9    of Fountain versus the City of New York 2004 West Law

10   941242 decided in 2004 by Judge Sweet.

11          The plaintiff makes a number of arguments in

12   their memorandum in support of this procedure, and the

13   government at the oral argument advanced reasons why it

14   would not be required to do this and the primary one as I

15   recall, and I probably -- the primary one was the burden

16   on the government in having to comply with, for example,

17   in the law enforcement privilege area in order to

18   properly assert that it requires a declaration or an

19   affidavit of the head of the department which reflects

20   personal review by the department head of the documents

21   in the question and personal consideration of whether the

22   law enforcement privilege should properly be invoked to

23   the protect the government's interest with respect to the

24   withholding of the document or information in question.

25          The court is going to order that I'm not

1   adopting per se Judge Weinstein's steps.  Although

2   there's nothing wrong with all of them.  However, the

3   court is going to require that if a party invokes a

4   privilege, that party must fully comply with all of the

5   steps required to invoke that privilege so, for example,

6   in this district, the invocation of attorney/client

7   privilege or the work product doctrine requires the

8   preparation of a log under the local rules which provides

9   sufficient information that would allow the opposing

10  party to assess the assertion of those two privileges and

11  whether to challenge them and further allow the court to

12  assess if the challenge is made whether the assertion is

13  proper.

14          The law enforcement privilege on the other hand

15  under the case law I have already gone over and discussed

16  at great length in my earlier ruling an affidavit or

17  declaration is required which reflects the review by the

18  department head of the documents in question.

19          Ordinarily and in most cases, I will only

20  require a local rule log.  However, that's the case

21  because in most cases, we only see attorney/client and

22  work doctrine asserted.  Here there have been many and

23  varied privileges asserted particularly law enforcement

24  or deliberative process.

25          The court understands the burden on the

1    government.  Obviously, for example, with respect to the

2    law enforcement primary it is quite burdensome to ask the

3    head of the department to sit down with a pile of

4    documents, I suppose it could be one, it could be 100,

5    that a lawyer has primarily assessed should be or I

6    suppose more likely that the people under the department

7    head who are familiar with the program involved or the

8    law enforcement process or information have said this

9    should not be turned over.  This would harm our law

10   enforcement efforts and to review that pile of documents

11   in order to determine on his own individual assessment as

12   to whether the assertion of the privilege is appropriate,

13   and that's quite a burden.

14        The court does not underestimate that burden,

15   over the privilege, the assertion of the law enforcement

16   privilege, in effect, it can't exist until somebody does

17   that.

18        With respect to attorney/client for example, you

19   have a lawyer who has appeared for a client whose

20   responsibility is protect their interest and in

21   connection with the advice of counsel almost that

22   privilege can be asserted when a lawyer sees a document

23   that he thinks would reveal attorney/client

24   communications.  That's not true of the law enforcement

25   privilege.  That privilege is really not for the lawyer

1       to assert in a litigation.  It is for the agency to

2       assert in the person of the head of that agency.

3               If we were at beginning of the case, I guess I

4       might be more inclined to think, well, I guess let's just

5       go with the lawyers doing it and we'll wait and get the

6       agency head to finally put it down in writing when we

7       need to.

8               However, in this instance and based on my

9       experience in this case and I suppose also in the FOIA

10      case, although the standards are somewhat different but

11      there's clearly their assertion of various exemptions,

12      et cetera, and various affidavits and declarations and

13      indices given that the failure to comply with meeting the

14      requirement of the assertion of the privilege at the time

15      the privilege is asserted has resulted in unacceptable

16      delays, inefficiencies, waste of time, both that of the

17      court and attorneys as well as the expenditure of effort

18      associated with the assertions that would not have been

19      necessary.

20              Further, the privileges that are being asserted

21      in this case, while there are some attorney/client and

22      work product obviously.  But the other privileges are

23      really much broader than an attorney/client or a work

24      product privilege.  Those are fairly defined.

25      Attorney/client has a test to involve lawyer advice

1    communicated to a client, protected not otherwise

2    disclosed.  It is fairly identifiable.  The assertion of

3    the law enforcement privilege, though, in this court's

4    view is really of a different nature.  In other words, it

5    is not routine a judgment to make that the privilege will

6    be asserted as to one particular piece of information or

7    another.

8              In other words, information to the government

9    may be -- they may feel very strongly should be protected

10   by this privilege and on another day in another

11   situation, they may conclude that it isn't important.

12   It's very broad privilege in the court's view and could

13   be asserted in a number of different contexts so because

14   of that and because of the experience in this case as

15   detailed, not detailed but set out in the plaintiff's

16   papers in which the court agrees with, as to delays and

17   inefficiencies due to the failure to comply with the

18   requirements at the time of the assertion of the

19   privilege, the court is going to order that if any

20   document is withheld from production when otherwise due

21   to be produced, based upon any privilege, then the party

22   withholding the document is required to meet and

23   establish that privilege at the time it is asserted so,

24   for example, with respect to attorney/client and work

25   product doctrine, the documents should be described in a

1    log that meets the requirements of our local rule and the

2    log will be produced at the time the document would have

3    otherwise been due to be produced.  With respect to the

4    assertion of the law enforcement privilege, for example,

5    the documents will have been reviewed and assessed by the

6    head of the document and a declaration provided at the

7    time the document is due to be produced which would

8    support or the government's assertion of the privilege.

9    I don't want to make a categorical statement in this

10   respect but it is my expectation that the government will

11   evidence its assertion of the privilege thoroughly and

12   completely.  In other words, it ought not expect that it

13   can throw a placeholder out there for the assertion on a

14   privilege and only later on come back with a second or

15   third or a fourth declaration.  It should expect that its

16   privilege assertion will be tested by that which it

17   produced at the time it asserted its privilege.  I gave

18   as examples attorney/client and law enforcement.  I mean

19   my order to apply to any privilege, and I'm not going to

20   go through every one but other than to generally say that

21   whatever it takes to assert that privilege, must be done

22   at the time the privilege is asserted.  Are there any

23   questions about what the court has just ordered?

24        MR. MARTIN:  No.  This is Edward Martin from the

25   government.  We would like the opportunity to spend some

1   time looking through the transcript of our hearing the

2   other day because I didn't recall you requesting briefs

3   on this and again didn't find it.  So we were planning on

4   briefing this issue, of course, under the normal schedule

5   as opposed to -- again the plaintiffs didn't label

6   there's as a motion or memorandum.  I don't know what

7   they labeled it as.  It said in their first line the

8   court had requested something.  It is not in the

9   transcript and we don't certainly recall it.

10          THE COURT:  They raised it in their reply

11  memorandum and because I gave oral argument, you had an

12  opportunity then to address it.  With respect to the

13  supplemental filing which the plaintiff did, I have a

14  distinct recollection.  I'm not sure.  Maybe it is wrong

15  to say I requested it.  But I believe that Attorney

16  Wishnie asked if he could submit something and I said

17  yes.  I can't imagine that I said it or meant it to be

18  that only he could.  Did you not find something like that

19  in the transcript?

20          MR. MARTIN:  I did not, your Honor.

21          THE COURT:  Anyone on the plaintiff's side that

22  respectfully suggest that my memory is poor in this

23  respect?  If it isn't poor, by what right did Attorney

24  Wishnie file his supplemental pleading?

25          MR. MARTINEZ:  This is Grant Martinez for the

1    plaintiff.  I'm not sure that you respect requested

2    supplemental briefing but you did ask for clarification

3    on this procedure and we then shifted from a discussion

4    of affidavits required to invoke the law enforcement

5    privilege into compliance with the local rules, the

6    privilege log.

7          THE COURT:  Let's me ask this, Attorney Martin.

8    Tell me how you can assert a law enforcement privilege if

9    you don't have a declaration from the head of the agency

10   meeting the three threshold requirements.  By what right

11   does the lawyer assert it?

12         MR. MARTIN:  We have counsel here from ICE and

13   he may very well be talking with the head of that agency

14   but what's important in these cases and it is one of the

15   things we would have briefed, there's numerous instances

16   in which we assert a law enforcement privilege.  After a

17   meet and confer with the plaintiff, they don't fight us

18   about that.  At this point we have to do a declaration

19   for every single one of these things and our position

20   would be your rule 26E that provides for a detailed

21   privilege log is what should apply to this case.  We

22   thought that was your ruling based on another look at the

23   transcript at the end of the session the other day that

24   you ruled the local rules will apply.  We left it at

25   that.  I've looked at your language that I have in front

1    of me.  Mr. Wishnie asked one thing I would ask in this

2    regard you address how the government has invoked or not

3    invoked the privilege.  I think it would be appropriate

4    for the government to and then the court said, I'm sorry.

5    You asked me that in a footnote in the reply.  Do you

6    have anything to say about that footnote?  And that's the

7    only indication that we have that you wanted any

8    additional information.  Of course, at that point both

9    sides briefly discussed their position but we still don't

10   find anything where the court asked for any additional

11   information.

12          MR. MARTINEZ:  This is Grant Martinez.  I think

13   our main thinking was that you had another argument

14   coming up after that and although we had discussed the

15   privilege log, this affidavit issue should be -- it could

16   be addressed better.  We submitted about an eight-page

17   motion that that, you know, certainly all of that

18   argument wouldn't have been necessarily appropriate at

19   that time because you had something you were trying to

20   get to immediately of our argument.

21          THE COURT:  I think I indicated maybe the

22   transcript doesn't reflect this but I thought I indicated

23   I hadn't read the cases at footnote 2 and that's why I

24   couldn't address the issue.  Otherwise I could have

25   addressed the issue because you raised it and I had given

```
1    the defendant an opportunity to responded at an oral

2    argument.  This doesn't go on endlessly.  I'm not really

3    terribly happy at the government's attitude toward this.

4    I will withdraw what I have just ruled, and I will give

5    you seven days from the today to respond to the

6    supplemental memorandum of the plaintiff which I'm going

7    to treat as a motion to require compliance with privilege

8    assertion procedures, and I will rule when I have

9    received your opposition.

10            MR. MARTIN:  Thank you, your Honor.

11            THE COURT:  There is a motion that came in today

12   and I can tell the defendant before you ask me, I'm not

13   giving you 21 days to respond to it.  I believe I have

14   the ability to alter the 21 day rule, particularly when

15   it pertains to something that contains no legal issues at

16   all but relates to timing scheduling so it is clear it is

17   your opportunity to respond to the plaintiff's motion to

18   alter the United States discovery response time or as I

19   read the motion alternatively to extend the deadline

20   three days for the limited purpose of permitting the

21   United States to respond to discovery requests which were

22   served electronically on the defendant United States on

23   October 1.  Have you read that memorandum, Attorney

24   Levine?

25            MR. LEVINE:  Yes.
```

1          THE COURT:  And do you oppose it?

2          MR. LEVINE:  We do oppose it.  I would be happy

3    to get into some of the reasons.  If we can have the

4    additional seven days to respond to that in writing we

5    would show request.

6          THE COURT:  You may not like what you ask for

7    because consider the possibility.  If in seven days you

8    file your memorandum and I grant the plaintiff's motion

9    which is one of two options.  I could grant it or deny

10    it.  If I granted it, you would then be faced on the 27th

11    of October with complying with the production attached to

12    the motion within I think it would be a week and a day.

13    No.  It would be a week and two days.  Is the government

14    in a position to that or does it wish to take the seven

15    days to respond to the discovery in the event that I do

16    grant the plaintiff's motion today?

17          MR. LEVINE:  I understand that position and we

18    will brief we believe that discovery was not properly

19    served and is void.  We understand if you grant their

20    ruling, we'll be required to produce the discovery on

21    that date.

22          THE COURT:  I will give you the seven additional

23    days if that's what you request.

24          MR. LEVINE:  Thank you.

25          THE COURT:  I will give you the seven days to

1    respond and I won't rule today.

2           Is there anything further that the court should

3    take up?  Thank you all very much for your patience.

4           (Whereupon, the above telephone conference

5    adjourned at 1:41 p.m.)

6

7

8

9    COURT REPORTER'S TRANSCRIPT CERTIFICATE

10   I hereby certify that the within and foregoing is a true

11   and correct transcript taken from the proceedings in the

12   above-entitled matter.

13

14   /s/  Terri Fidanza

15   Terri Fidanza, RPR

16   Official Court Reporter

17

18   DATE_____

19

20

21

22

23

24

25