# STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 24

# MEMORANDUM

**DATE:** October 20, 2009

**TO:** Maura Murphy-Osborne – Assistant Attorney General

**FROM:** Edward A. Blanchette, MD – Clinical Director, Connecticut Dept of Correction

**RE:** <u>Rashad Ahmad Refaat El Badrawi v. Department of Homeland Security, et al.</u>
Case No. 3:87-CV-1074 (JVH)

Following an in-depth review of official records and reports concerning the above-referenced case, I am prepared to render an expert medical opinion on several issues raised in this complaint. In this report, I have reviewed and will reference the following materials:

a. Second Amended Complaint – Rashad Ahmad Refaat El Badrawi v. Department of Homeland Security et al., Case No. 3:87-CV-1074 (JCH), filed with the United States District Court for the District of Connecticut on November 4, 2008.
b. Medical records (two letters) from the Lane Health Center, Northeastern University, Boston, MA – dated 8/5/1996 & 6/2/1996.
c. Medical records from the New England Baptist Hospital (outpatient department), including a colonoscopy with multiple biopsy results on 8/7/2001.
d. Medical Records of the plaintiff, Rashad El Badrawi, from January 1, 2003 to October 24, 2004, generated by the UCONN Medical Group, the UCONN Occupational Health Center, and the UCHC Employee Health Department. Of special note were consultations from the UCONN Medical Group – GI Associates dated 10/20/2003, 11/24/2003, 5/3/2004 & 8/2/2004 – and radiology GI studies from 4/14/2004 & 5/24/2004.
e. Connecticut Department of Correction Records concerning Rachad El Badrawi, Inmate #326012, including, but not limited to, a Medical Intake Screening 10/29/2004, Mental Health Screening 10/29/2004, Physician's Orders starting on 10/29/2004, an evaluation by an attending CMHC physician (Dr. James McKenna) on 11/12/2004, Medication Administration Records from October & November 2004, and an Inmate Request Form from 11/1/2004.
f. DOC Computer Records concerning Inmate Rachad El Bardrawi #326012 - RT50 & RT60
g. United States Department of Justice Immigration and Naturalization Service – Order to Detain or Release Alien Form – to the Warden of the Hartford Correctional Center, dated 10/29/2004, to hold Mr. El Badrawi at that facility.
h. Deposition of Rashad Ahmad Refaat El Badrawi, dated September 23, 2009.

I have been a licensed physician since 1975, having maintained my physician's license with the State of Connecticut throughout my career. I was previously employed at both St. Francis Hospital and the Sharon Hospital Emergency Rooms in the early 1980's. I am Board-Certified in both Internal Medicine and Infectious Disease, and was in private practice as both an internist and an Infectious Disease Consultant from 1980 to 1993. I have also been employed by the State of Connecticut Department of Correction (DOC) since 1984. Currently I am the Clinical Director for the Connecticut DOC and have served in this capacity since 1990. In the course of my past clinical practice, I have evaluated numerous patients with Inflammatory Bowel Disease, including patients with Crohn's Disease and Ulcerative Colitis, both inside and outside the correctional system. Over the years, I have diagnosed and managed well over 50 patients with Crohn's Disease, and have dealt with both chronic management issues and complications, especially associated infections.

In this report and at your request, I have summarized certain aspects of the available information concerning this case that were relevant in formulating my opinions concerning the allegations made by the plaintiff, Rashad El Badrawi, with regard to his medical care and clinical course while incarcerated at the Hartford Correctional Center, Hartford, CT in 2004. I have also outlined in detail the basis for these opinions.

Other than my present salary as the Connecticut DOC Clinical Director, I will receive no special or additional compensation for any aspect of this expert report or for my court testimony, if needed.

## BRIEF DESCRIPTION OF CROHN'S DISEASE

The plaintiff's allegations in his 2nd Amended Complaint are all related to a chronic medical ailment first diagnosed in 1996, Crohn's Disease. This is inflammatory bowel disease of unknown etiology characterized by a chronic inflammation of all layers of the involved GI tract. While it can involve any portion of the GI tract, including the mouth and esophagus, about half the cases involve both the terminal small bowel (ileum – especially the distal portion) and the colon, while the remaining cases are restricted either to the small bowel or confined to the colon, in equal proportion. Crohn's Disease is also characterized by "skip areas", i.e. a section of the GI tract could be severely involved, while adjacent areas could be completely free of any inflammation, followed by inflammation of the GI tract just a short distance away. The disease tends to be smoldering, unlike ulcerative colitis (the other major Inflammatory Bowel Disease) which often presents in a more explosive fashion. For this reason, Crohn's Disease is often diagnosed after several years of GI symptoms. The most common symptoms noted early in the clinical course include abdominal pain (especially lower), anorexia, mild anemia, and mild nonbloody diarrhea. GI bleeding is unusual early in the clinical course, and even with acute exacerbation of disease, GI bleeding almost always occurs in the face of multiple days, often several weeks, of abdominal pain and discomfort. Complications noted in established Crohn's Disease include enterocutaneous fistulas, abcess formation, rectal fissures, renal stones, gallstones, malnutrition syndromes, anemia, and an increased risk of cancer.

## SUMMARY OF DOCUMENTED MEDICAL HISTORY & INCARCERATION EVENTS

From the plaintiff's medical records, it appears that the diagnosis of Crohn's Disease was first established in 1996 at the New England Baptist Hospital where Mr. Rashad Badrawi underwent a colonoscopy and biopsy, but the records submitted were quite sketchy and incomplete. A letter from Gail Kaufman, MD (GI Consultant) dated **June 2, 1996** to Jeffrey Hyett, RNC of Northeastern University references a colonoscopy performed on the plaintiff that showed "some mild inflammation" involving the cecum, consistent with Crohn's disease. There was also a reference to an episodic aphthous stomatitis history (mouth ulcers). The plaintiff was started on Asacol at that time with the opinion that "I suspect his disease will be rather easily controlled."

A second letter dated **August 5, 1996** from Dr. Kaufman stated that the plaintiff was seen in the office on 7/29/96 and that he was doing well on the Asacol. A low B12 level was noted and arrangements were made for a series of Vitamin B12 injections. These two letters are the only medical records available until 8/7/2001 when the plaintiff was once again seen by Dr. Gail Kaufman at the New England Baptist Hospital outpatient department, at which time he underwent a colonoscopy with biopsy, apparently to document the extent of his chronic inflammatory bowel disease. The findings were described as "mostly burnt-out colitis – most evident in the ileum and lower sigmoid. In the rectum, there were a few active aphthous ulcerations." There was no acute inflammation seen during the colonoscopy, nor was there any acute inflammation seen on the biopsy specimens submitted at that time.

After 2001, I have no records that that Mr. Rashad El Badrawo was seen by any physician to follow his Crohn's Disease until October 2003 when the plaintiff was seen in the UCONN Medical Group GI Clinic from October 2003 until August 2004. The plaintiff was seeking routine follow-up at that time and was not suffering from an acute illness or exacerbation of his Crohn's Disease. He was evaluated on at least four separate occasions (10/20/2003, 11/24/2003, 5/3/2004 and 8/2/2004) and it seems quite clear from the medical records that the plaintiff "had very mild Crohn's Disease". This was the opinion of both the UCONN gastroenterologists and the plaintiff himself, who stated that he had "a very mild form of disease" (see GI consultation dated 10/23/2003). Up to that time, Mr. El Badrawi had never been hospitalized for this disorder, nor had he ever been placed on steroids. His most recent flare prior to these consultations was in April 2003 when "he had experienced some cramping abdominal pain on the right side of his belly." His management consisted of Asacol 1200 mg bid (twice a day).

Repeated abdominal examinations by the GI consultants during 2003 and 2004 were consistently normal. The history of his mild vitamin B12 deficiency (related to Crohn's Disease involving the terminal ileum) was noted – and that the plaintiff had his B12 injections discontinued after a few months. He was found to have a low B12 level once again (101 pg/ml on 11/19/2003 with normal values > 230) and the B12 injections were re-instituted for a number of months. He was also given a prescription for folic acid (12 mg/day) to decrease his risk of colon cancer and his Asacol schedule was changed to 800 mg po tid (3 times/day) rather than 1200 mg bid (twice-a-day). It is unclear to me if the plaintiff ever filled his folic acid prescription, but he has never mentioned it throughout these proceedings to the best of my knowledge.

I note that in the UCONN GI consultant records that the plaintiff himself characterized the symptoms associated with "his Crohn's exacerbations" as "episodes of severe abdominal pain and constipation" and not diarrhea. He denies GI bleeding on multiple occasions throughout his medical history, and it is unclear to me if he ever did complain of blood in his stool prior to his incarceration.

Despite his long-standing Crohn's Disease diagnosis, the plaintiff's CBC performed on 11/19/2003 showed no anemia whatsoever (Hb – 14.4, HCT – 41.7) and a normal WBC of 4500. I also noted a normal albumin of 4.0 (no evidence of malnutrition) as well as normal renal function, normal liver function, normal serum electrolytes, and normal lipid studies on that date. All of these studies are consistent with very mild disease (Crohn's).

A double-contrast Upper GI X-ray study was performed on 4/14/2004 that was totally unremarkable, demonstrating a normal esophagus, stomach, duodenum, and proximal small bowel, with a normal transit time. A follow-up small bowel X-ray series (with barium) to evaluate the remainder of the small bowel, including the terminal ileum was done on 5/24/2004. It was also normal, with the conclusion "unremarkable appearing duodenum, jejunum, ileum, and terminal ileum with normal mucosal pattern and peristalsis". Once again, these normal x-rays document and emphasize the extremely benign form of Crohn's Disease present in the plaintiff.

The patient was seen in a number of other UCONN Health Center specialty clinics for more minor issues, including Ophthalmology (dry eyes, myopia), Internal Medicine (STD issues, scrotal erosion), BNT (nasal septal deviation, possible polyps, nasal congestion), and Occupational Health (tendonitis, epicondylitis due to ergonometric concerns). Dr. Silverman (Internal Medicine) also noted a history of depression for which he had been prescribed medications (?unknown) but the plaintiff had discontinued this medication in 2002.

Following his arrest, the plaintiff was admitted into the Hartford Correctional Center (HCC) on 10/29/2004, and had his medical intake screening performed that same day at 6:55 PM by a registered nurse. Of special interest is that the plaintiff clearly stated that he was taking Asacol 400 mg tablets, "2-3 pills bid" (twice a day or from 4 to 6 pills a day = 1600 mg to 2400 mg per day), but that he had last taken this medication on 10/2/2004 – i.e. a full 4 weeks ago. DOC custody records document that the plaintiff was 5'7" tall and weighed 173 lbs. He appears to have a robust appearance in his prison photo.

Also on 10/29/2004, the plaintiff underwent a Mental Health screening, at which time he denied any mental health issues except for depression 3 years previously, for which he had been given an antidepressant by "my regular medical doctor". He was found to be unremarkable with regard to this mental health screening, and no further intervention was deemed necessary at that time. He was informed on how to contact the Mental Health DOC providers and was classified as MH-1 (the best MH rating).

Mesalamine (Asacol) was prescribed by Dr. Ganpat Chouhan, a CMHC on-call physician, on 10/29/2004 as well. The plaintiff submitted an Inmate Request Form dated 11/1/04 that stated, "I have Crohn's disease, and I need my medication (400 mg pills, 6 pills/day) I need to see a doctor for that. I came in Friday night." The mesalamine was delivered to the plaintiff on Wednesday

(11/3/2004) according to the Medication Administration Record (MAR) sheet. No other Inmate Request Forms were submitted by the plaintiff during the course of his incarceration at HCC.

The plaintiff was seen at HCC by Dr. James McKenna on 11/12/2004. At that time, the plaintiff stated that he "had a small amount of rectal bleeding one week ago, but none since then". His abdominal examination was negative on that physical exam that day (no abdominal pain to palpation, no masses, no organomegaly). The patient did not seek any further medical attention and sent no additional Inmate Request Forms. According to CT DOC computer records, the plaintiff was discharged from Hartford CC on 12/22/2004, having spent a total of 55 days in that facility.

## CONCLUSIONS:

1. The plaintiff had an exceptionally mild form of Crohn's Disease. All the GI Consultants who have seen him in the past have agreed on this point, and multiple studies support this conclusion.
2. The patient was without his Asacol for 4 to 5 days (unclear if he took some medication on 10/29/2004 prior to his incarceration). In my experience, due to the smoldering nature of Crohn's disease, related as it is to chronic inflammatory changes, it is very unlikely that a patient with more aggressive Crohn's Disease would exhibit severe symptoms in such a short time, let alone a Crohn's Disease as benign as Mr. El Badrawi.
3. Warden Lee has no control over medical care issues, such as medication ordering and delivery
4. The plaintiff claims in his deposition that he had been taking his Asacol twice a day as prescribed religiously prior to his incarceration, and that the medical intake nurse entered false information when he wrote in the DOC medical record that the patient last took his Asacol on 10/2/2004, a full 4 weeks prior to this incarceration. I find this allegation to be most unlikely, as DOC nursing staff are trained to highlight certain information, and with medication compliance as such a major issue in correctional medicine, so important in physician decision-making, this information is very carefully sought out and accurately recorded by correctional nurses. I find it unacceptable that this one piece of important medical information, one that has to be written in and is not part of a check-list, would be in error, particularly with a highly-educated man as the plaintiff with no apparent language barrier. I would not be at all surprised that Asacol administration would be erratic in the face of such benign disease for many well-educated patients over the years.
5. The lack of medication compliance in the plaintiff is also demonstrated by the absence of folic acid in his medical regimen (12 mg/day) and a change in his Asacol regimen to 800 mg po tid (3 times/day). These recommendations were made by the UCONN Health Center gastroenterologists but not implemented by the patient. I would note that since Asacol is effective topically, a tid or qid regimen is standard.
6. In his deposition, the plaintiff claims that he receives all of his medications from outside the country (Lebanon) and therefore he cannot supply any documentation that he has faithfully filled prescriptions to document his compliance. This seems incredible to me. He has not produced a shred of documentation that would support the strict medical compliance that he claims.
7. The plaintiff wrote a straightforward Inmate Request Form on 11/1/2004 asking for his medications and for a physician evaluation. He received both in a timely fashion, in my opinion.

If symptoms persisted or if other significant issues required attention, why would he not submit another Inmate Request Form?

8. Had the plaintiff told Dr. McKenna on 11/12/2004 that he was having intractable problems with his Crohn's Disease, I would have been notified, would have transferred Mr. El Badrawi to a high-live medical infirmary where he would have access to round-the-clock nursing care, daily physician visits, IV therapy, x-ray on-site, etc. I would have also, with his permission, communicated with his UCONN gastroenterologist to receive any specific recommendations. It seems very clear from the DOC medical record, however, that the plaintiff was actually quite stable and probably asymptomatic at the time he was seen by Dr. McKenna. I don't believe he had "internal bleeding" at any time while incarcerated. In my experience, when GI bleeding is an issue, it is noticed by inmates and correctional staff alike and quickly brought to the attention of correctional medical staff by correctional officers or other correctional personnel.

In summary, in my opinion the plaintiff received an appropriate standard of care that met both community standards and correctional medical standards. Notwithstanding a short delay in medication delivery, perhaps in part due to the week-end, the plaintiff's medical needs were met consistently in a professional manner. There was never any objective medical evidence noted or even an inmate complaint made at the time of incarceration that was consistent with a Crohn's Disease severe acute exacerbation as claimed by the plaintiff.

*Edward A Blanchette, MD*

Edward A. Blanchette, MD

Connecticut DOC Clinical Director